COMMONWEALTH *vs.* WAYNE W., a juvenile
(and a companion case[1]).

Suffolk. October 6, 1992. - January 27, 1993.

Present: LIACOS. C.J., WILKINS. ABRAMS, NOLAN. LYNCH. O'CONNOR. & GREANEY. JJ.

*Due Process of Law*, Juvenile delinquency proceeding. *Constitutional Law*, Equal protection of laws, Self-incrimination. *Practice, Criminal*, Juvenile delinquency proceeding, Transfer hearing, Psychiatric examination. *Juvenile Court*, Jurisdiction. *Jurisdiction*, Delinquent child, Transfer hearing, Juvenile delinquency proceeding.

General Laws c. 119, § 61, as appearing in St. 1990, c. 267, § 3, governing the procedures for transfer of certain juvenile matters to the Superior Court for trial, does not impinge on Federal due process guarantees either in requiring, by way of a rebuttable presumption, that the juvenile assume the burden of producing evidence that he is not dangerous and should have his case remain within the juvenile justice system [222-224], or by establishing the evidentiary standard for transfer of the case as the preponderance of the evidence [224-225].

The distinction drawn in G. L. c. 119, § 61, between juveniles charged with delinquency by reason of murder and those charged with delinquency by reason of other crimes is rational and related to a legitimate legislative goal, and violates no equal protection rights guaranteed by the Fourteenth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights. [226]

In the context of an adversary hearing to determine a juvenile's dangerousness and amenability to rehabilitation under G. L. c. 119, § 61, the juvenile may not be compelled to submit to a psychiatric examination by a Commonwealth expert where the juvenile does not seek to introduce his own psychiatric evidence. [226-230]

A juvenile who voluntarily elects at a transfer hearing held pursuant to G. L. c. 119, § 61, to present expert psychiatric evidence that includes the juvenile's own statements is not denied his constitutional privilege against self-incrimination if he is ordered to submit to an examination by a psychiatrist retained by the Commonwealth. [230-232]

A Juvenile Court judge had authority under Rule 207 of the Special Rules of the District Courts to grant a motion of the Commonwealth to com-

---

[1]Commonwealth *vs.* Vernon F., a juvenile.

pel a juvenile to submit to a psychiatric examination by a Commonwealth expert in a proceeding under G. L. c. 119, § 61. [233]

INDICTMENTS found and returned in the Superior Court Department on November 22, 1991.

Motions to dismiss were heard by *John F. Moriarty*, J., and the cases were reported by him to the Appeals Court. The Supreme Judicial Court transferred the case on its own initiative.

*Geraldine S. Hines* for Wayne W., a juvenile.

*Stephen Hrones* (*Murray A. Kohn* with him) for Vernon F., a juvenile.

*Annemarie Relyea-Chew*, Assistant District Attorney (*Philip T. Beauchesne* with her) for the Commonwealth.

*Jane Larmon White, Anthony J. DeMarco, John Reinstein, & John F. Palmer*, for Committee for Public Counsel Services & others, amici curiae, submitted a brief.

GREANEY, J. The two juveniles (defendants) were each charged in complaints in the juvenile session of the Roxbury Division of the District Court Department (Juvenile Court) with two counts of delinquency by reason of murder in the first degree, conspiracy to commit murder, and illegal possession of a firearm. After a hearing held pursuant to G. L. c. 119, § 61, as appearing in St. 1990, c. 267, § 3, the cases were transferred to the Superior Court where indictments charging each defendant with the same crimes were returned. The defendants moved to dismiss the indictments alleging that: (1) the new G. L. c. 119, § 61, under which the transfers were ordered,[2] violates the due process and equal

---

[2]The new G. L. c. 119, § 61, reads, in pertinent part, as follows:

"If a child is charged with murder in the first or second degree, and a finding of probable cause has been made, there shall exist a rebuttable presumption that the child presents a significant danger to the public and that such child is not amenable to rehabilitation within the juvenile justice system. If, at the hearing, the court enters a written finding based upon a preponderance of the evidence that the child presents a significant danger to the public and that the child is not amenable to rehabilitation within the juvenile justice system, the court shall dismiss the delinquency complaint

protection provisions of the Fourteenth Amendment to the United States Constitution and art. 12 of the Declaration of Rights of the Massachusetts Constitution; (2) the Juvenile Court judge erred in excluding the testimony of the defendants' expert psychiatric witnesses concerning their dangerousness and amenability to rehabilitation within the juvenile justice system because the defendants would not submit to psychiatric evaluations by an expert selected by the Commonwealth; and (3) the findings made by the Juvenile Court judge were insufficient to support his decision to transfer the cases to the Superior Court. A judge of the Superior Court indicated how he would rule on the defendants' motions to dismiss. The judge concluded, however, that the motions raised a "serious issue as to the constitutional validity of a newly enacted statute (as well as to various other aspects of the Juvenile Court proceedings)," and reported the issues raised by the motions to the Appeals Court. See Mass. R. Crim. P. 34, 378 Mass. 905 (1979). We transferred the case to this court on our own initiative. We conclude that G. L. c. 119, § 61, as appearing in St. 1990, c. 267, § 3, is constitutional. We also conclude, however, that the issue of admission of expert psychiatric evidence concerning the defendants' dangerousness and amenability to rehabilitation within the juvenile justice system must be reconsidered.

The following provides pertinent background. Around 8 P.M. on April 20, 1991, the victims, a fifteen year old boy and an eleven year old boy, were near a group of youths gathered in front of an apartment building on Highland Avenue in the Roxbury section of Boston, when they were shot and killed. Later that night, the defendants and a third juvenile, D.B., were apprehended and charged in connection with the killings. There was evidence that the defendants were members

---

and cause a criminal complaint to be issued. The case shall thereafter . . . proceed according to the usual course of criminal proceedings . . . ."

The probable cause phase of the case is usually decided at a hearing known as a Part A hearing, while the questions of dangerousness and amenability to rehabilitation are considered at a proceeding styled a Part B hearing.

of the "Orchard Park Trailblazers," and that several of the youths in front of the building were members of the "Highland Blackhawks." D.B. and the defendants went to the Highland Avenue section of Roxbury that evening because of a dispute between the gangs. The defendants knew that D.B. was carrying a loaded gun, and they accompanied D.B. when he shot and killed both victims.

Following a probable cause (Part A) hearing, the Juvenile Court judge found probable cause to believe that the defendants (and D.B.) had committed the offenses with which they were charged. Subsequently, the judge held three separate (Part B) hearings for the purpose of determining whether to dismiss the delinquency complaints against each defendant and D.B., and transfer their cases to the Superior Court. After the first Part B hearing, the judge concluded that D.B.'s case should be retained within the juvenile justice system.[3] At the close of the defendants' Part B hearings, the judge concluded that the cases against the defendants should be transferred to the Superior Court. He, therefore, ordered that the Juvenile Court complaints against the defendants be dismissed and that adult proceedings commence in the Superior Court.

The hearings involving the defendants were held under the new § 61, see note 2, *supra*, which requires that the Juvenile Court first hold a Part A hearing and, if probable cause is found, a Part B hearing in every case involving a charge of murder.[4] At the Part B hearing, the statutory presumption of

---

[3]D.B. has since entered guilty pleas to two counts of delinquency by reason of murder and one count of delinquency by reason of illegal possession of a firearm.

[4]The 1990 amendment also requires transfer hearings when the "offense alleged is . . . manslaughter, rape, kidnapping, or armed robbery that has resulted in serious bodily injury." St. 1990, c. 267, § 3.

Effective December 31, 1991, G. L. c. 119, § 61, was further amended by St. 1991, c. 488, §§ 2-6, to provide that the presumption of dangerousness and nonamenability to treatment and the lowered standard of proof also apply to juveniles charged with (1) manslaughter; (2) assault with a dangerous weapon with intent to rob or murder a person over sixty-five years of age (G. L. c. 265, § 18); (3) rape (G. L. c. 265, § 22); (4) rape of

dangerousness and nonamenability to rehabilitation places on the juvenile the initial burden of producing evidence showing that he does not present a significant danger to the public and is amenable to rehabilitation within the juvenile justice system.[5] If the juvenile meets this initial burden, transfer may still be ordered should the Commonwealth establish by a preponderance of the evidence that the juvenile is dangerous and not a suitable candidate for rehabilitation. Prior to the 1990 version of § 61, a juvenile charged with murder could have his case transferred to Superior Court after a finding of probable cause only if the Juvenile Court judge found, based on clear and convincing evidence, that the juvenile presented a significant danger to the public and was not amenable to rehabilitation in the juvenile justice system.

1. *Constitutional challenges to the statute.* (a) *Due process.* We first address whether Federal due process requirements preclude: (1) requiring the defendants, who are charged with murder, to assume the initial burden of producing evidence on the issues of dangerousness and amenability to rehabilitation identified in § 61; and (2) permitting the transfer of their cases to the Superior Court based on findings reached under a preponderance of the evidence standard.

There is "no [Federal] constitutional right to any preferred treatment as a juvenile offender." *Stokes* v. *Fair*, 581

---

a child by force (G. L. c. 265, § 22A); (5) kidnapping (G. L. c. 265, § 26); and (6) armed burglary (G. L. c. 266, § 14).

[5]The Juvenile Court and the Superior Court judges assumed that once a juvenile had introduced sufficient evidence to warrant a finding that he did not present a significant risk to the public and was amenable to treatment, the presumption disappeared and had no continuing evidentiary force. We agree that this is the correct interpretation of the statutory provision creating the presumption. After the defendants had presented evidence sufficient to warrant findings of nondangerousness and amenability to rehabilitation, the Commonwealth had to go forward with its evidence and the issues were to be decided on all the evidence without the benefit of the presumption. See *Jacquot* v. *Wm. Filene's Sons*, 337 Mass. 312, 316 (1958); *Redstone* v. *Board of Appeals of Chelmsford*, 11 Mass. App. Ct. 383, 385 (1981); P.J. Liacos, Massachusetts Evidence 53-54 (5th ed. 1981).

F.2d 287, 289 (1st Cir. 1978), cert. denied, 439 U.S. 1078 (1979). Had it wanted, the Legislature could have lawfully chosen to abolish Juvenile Court jurisdiction over certain violent crimes without infringing on a juvenile's constitutional rights. A State that elects to commit to its judiciary the responsibility of determining whether a youthful offender will be tried as a juvenile or an adult (as the Commonwealth presently does by means of G. L. c. 119, § 61) must observe only the constitutional due process requirement of essential fairness. *Id. Kent* v. *United States*, 383 U.S. 541, 557 (1966). "The [United States Supreme Court] has never attempted to prescribe criteria for, or the nature and quantum of evidence that must support, a decision to transfer a juvenile for trial in adult court." *Breed* v. *Jones*, 421 U.S. 519, 537 (1975).[6] Under the new § 61, the Juvenile Court judge must determine that there is probable cause to believe that murder has occurred, and that the juvenile who has been charged has committed the murder. In this context, a determination of probable cause means a determination that there exists sufficient credible evidence to warrant a conclusion by a fact finder beyond a reasonable doubt that the defendant is guilty. See *Commonwealth* v. *Matthews*, 406 Mass. 380, 388 (1990) (directed verdict standard governs probable cause determination at the transfer hearing); *Myers* v. *Commonwealth*, 363 Mass. 843, 849-850 (1973). See also *A Juvenile*

---

[6]The Superior Court judge correctly noted in his memorandum that the United States Supreme Court has distinguished between juvenile adjudicatory proceedings and juvenile transfer proceedings. In the former, the juvenile must be afforded almost the full range of constitutional protections that would apply to an adult at a criminal trial. See *In re Winship*, 397 U.S. 358 (1970) (in juvenile adjudicatory proceeding, elements of crime must be proved beyond a reasonable doubt); *In re Gault*, 387 U.S. 1 (1967) (in juvenile adjudicatory proceeding, juvenile entitled to adequate notice of charges, to counsel, to invoke right against self-incrimination, and to right of cross-examination). But see *McKeiver* v. *Pennsylvania*, 403 U.S. 528 (1971) (jury not required during adjudicatory stage of juvenile proceeding). In contrast, less is required in juvenile transfer proceedings, which do not determine a juvenile's guilt but rather are directed at determining the forum where the case will be tried, and, if the juvenile is found guilty, the punishment that may be imposed.

v. *Commonwealth*, 375 Mass. 104, 107 (1978). The defendants do not challenge the propriety of the judge's findings of probable cause.

Where there is evidence warranting a finding beyond a reasonable doubt that a juvenile has committed murder, it is entirely reasonable to assume that the juvenile presents a significant danger to the public and may not be amenable to rehabilitation within the juvenile justice system. See *Breed* v. *Jones*, *supra* at 535 ("there appears to be widely shared agreement that not all juveniles can benefit from the special features and programs of the juvenile-court system . . . . [T]ransfer provisions represent an attempt to impart to the juvenile-court system the flexibility needed to deal with youthful offenders who cannot benefit from the specialized guidance and treatment contemplated by the system"). The juvenile is the party in the best position to produce evidence to the contrary, which, most often, will include lay testimony by family members, teachers, or other adult acquaintances, and expert psychological or psychiatric testimony. Federal due process guarantees are not impinged on where the Legislature requires, by way of a rebuttable presumption of the type in § 61, see note 5, *supra*, that the juvenile assume the initial burden of producing evidence that he is not dangerous and should have his case remain within the juvenile justice system.

The preponderance of the evidence standard in the new amended § 61 also represents an acceptable balance between the various interests at stake in the transfer hearing, and as such is not in violation of Federal due process guarantees. See *Mathews* v. *Eldridge*, 424 U.S. 319, 335 (1976) (in considering whether challenged action satisfies due process, courts must balance private interest affected, risk of an erroneous deprivation and value of additional or substitute safeguards, and the government's interest). See also *Care & Protection of Robert*, 408 Mass. 52, 58-59 (1990); *Commonwealth* v. *Barboza*, 387 Mass. 105, 112, cert. denied, 459 U.S. 1020 (1982). We do not minimize the defendants' interest in remaining within the juvenile justice system, where a

determination of guilt carries the prospect of the lesser penalty than does conviction of murder as an adult, and where, in an appropriate case, psychological, social, and educational treatment and benefits hold out some promise of rehabilitation. The Commonwealth, however, has at least an equally compelling interest in seeing the public protected from the early release of a dangerous and uncontrollable youth charged with murder as to whom probable cause has been found, and an additional interest in obtaining both retribution for the murder and the deterrent effects of a Superior Court trial and the imposition of adult penalties on violent and very dangerous juvenile offenders.

The defendants concede that the decision that must be made in a Part B hearing is somewhat imprecise and subjective. We see no reason to believe that any higher standard of proof than a preponderance of the evidence is likely to result in a more accurate determination of the risk of recidivism posed by a juvenile charged with murder.[7] We conclude that the Legislature's adoption of the preponderance of the evidence standard, in the new § 61, is not in violation of any Federal due process right.

---

[7] The defendants also contend that the presumption that a juvenile is dangerous and not amenable to treatment relieves the prosecution of proving beyond a reasonable doubt all the elements of the crime with which the juvenile has been charged. The premise of this contention is that nonamenability to rehabilitation and dangerousness to the community become elements of the crime of murder in the case of juveniles so charged. See, e.g., *In re Winship, supra* (prosecution must prove all elements of crime beyond reasonable doubt). This argument ignores the distinction between transfer and adjudicatory proceedings, see note 6, *supra*, and the fact that the United States Supreme Court has explicitly disavowed attempting to prescribe the quantum of proof required to justify a juvenile's transfer. *Breed* v. *Jones*, 421 U.S. 519, 537 (1975).

The defendants' argument that transfer proceedings are punitive in nature fails for a similar reason. The outcome of a transfer proceeding affects the penalty imposed on a juvenile only if, in a subsequent proceeding, there is a determination of the juvenile's guilt beyond a reasonable doubt. At the subsequent proceeding, the juvenile will be protected by the full, or almost the full, panoply of constitutional protections, depending on whether he is tried in the juvenile or adult system.

(b) *Equal protection.* The new § 61 subjects juveniles
charged with murder to different treatment based on the
crime with which they are charged. Juveniles charged with
murder obviously are not a suspect class, *News Group Boston, Inc.* v. *Commonwealth*, 409 Mass. 627, 632-633 (1991),
and they do not have a constitutionally protected right to be
retained in the juvenile justice system. *Stokes* v. *Fair*, *supra*
at 289. The classification by the Legislature in the new § 61,
therefore, must be sustained if it is reasonably related to a
legitimate legislative goal. See *Cleburne* v. *Cleburne Living
Center, Inc.*, 473 U.S. 432, 442 (1985); *Massachusetts Bd.
of Retirement* v. *Murgia*, 427 U.S. 307, 314 (1976); *Commonwealth* v. *Brasher*, 359 Mass. 550, 558 n.2 (1971). There
is no doubt that this standard is met. The new § 61 facilitates the transfer of juveniles charged with murder from Juvenile to Superior Court. The purposes of the statute include
protection of the public from the possible premature release
of very dangerous individuals, retribution for crimes committed, and the deterrent effects of adult trials and penalties.
We conclude that the legislative distinction drawn between
charges of delinquency by reason of murder, and delinquency
by reason of other crimes, is a rational one and consistent
with evident and legitimate legislative objectives. *News
Group Boston, Inc.* v. *Commonwealth*, *supra.*

The defendants also suggest that the amended § 61 is in
violation of due process and equal protection rights granted
by art. 12. They make no meaningful argument, however, on
the respects in which art. 12 should be construed to grant
them greater rights than those afforded by the Fourteenth
Amendment. We discern no basis for implying any greater
rights under the State Constitution in these circumstances.
We hold, therefore, that the new § 61 does not violate due
process or equal protection rights conferred by art. 12.

2. *Exclusion of defendants' experts' testimony.* In the Part
B hearings, both the Commonwealth and the defendants desired to present expert testimony focusing in particular on
each defendant's amenability to rehabilitation within the juvenile justice system. The defendants retained experts for

this purpose with funds provided by the Commonwealth and indicated their intent to introduce the resulting expert psychiatric evidence. The Commonwealth filed a motion requesting that the Juvenile Court judge appoint the Bridgewater State Hospital forensics unit to evaluate the defendants. This motion was withdrawn when the parties agreed that the defendants would cooperate in an examination conducted by a psychologist from the Juvenile Court clinic of the Roxbury District Court, who testified at their respective Part B hearings. Shortly before the Part B hearings, the Commonwealth renewed its motion for orders compelling the defendants to submit to a psychiatric evaluation by an expert chosen by the Commonwealth.[8] Based on authority that he believed was impliedly contained in G. L. c. 119, § 61, the Juvenile Court judge allowed the Commonwealth's motions.[9] The defendants, through their counsel, refused to submit to the examinations, on the ground that it would violate their Federal and State constitutional privileges against self-incrimination. Relying on *Blaisdell* v. *Commonwealth*, 372 Mass. 753 (1977), the Juvenile Court judge then excluded the testimony of the defendants' psychiatric experts as a sanction for the defendants' failure to cooperate in the court-ordered examinations. The defendants challenge the exclusion of this evidence as violative of their constitutional rights. We conclude that the privileges apply in these circumstances, but that the defendants, if they voluntarily choose to offer expert psychiatric evi-

---

[8]The Commonwealth was apparently prompted to this step because D.B. had been retained in the juvenile justice system at the close of his Part B hearing.

The prosecutor agreed that, if the defendants cooperated in psychiatric evaluations by an expert of the Commonwealth's choice, the Commonwealth would be precluded from using evidence gained through the evaluation at trial either in its case-in-chief or for impeachment purposes.

[9]As to one of the defendants, the Juvenile Court judge purportedly denied the Commonwealth's motion "given the answer of the defendant that there would be non-cooperation." However, he then ruled that defendant's expert would be excluded on the basis of *Blaisdell*. In effect, both defendants were sanctioned, by the exclusion of their experts' testimony, for their refusal to cooperate in additional psychiatric examinations.

dence, can be ordered to participate in an examination by a Commonwealth expert.[10]

The Fifth Amendment to the United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." Similarly, art. 12 of the Massachusetts Declaration of Rights provides that "[n]o subject shall . . . be compelled to accuse, or furnish evidence against himself." These constitutional privileges foreclose the Commonwealth from compelling testimony[11]

---

[10]The defendants also argue that the findings made by the Juvenile Court judge were insufficient to support his decision to transfer the cases. If this contention were correct, there would be no need to examine the issue of the compelled psychiatric examinations because the Commonwealth would not have satisfied its burden under § 61. We conclude, however, that the judge's findings justify transfer. A judge has considerable discretion in deciding whether a juvenile should be tried as an adult. *Commonwealth* v. *Matthews*, 406 Mass. 380, 383 (1990). The judge here considered the factors relating to transfer in § 61, and made reasonably detailed findings.

The judge found probable cause to believe that the defendants, members of a gang, conspired to commit murder due to hostility between their gang and another gang. The seriousness of the offense supports the conclusion that the defendants are dangerous to the public. In addition, the defendants' court records revealed previous arrests, the most recent of which were for assault by means of a dangerous weapon (gun) and larceny from a person. The court-appointed expert testified that in her opinion, both defendants are amenable to treatment. The judge rejected her conclusion on the ground that she had accepted the defendants' self-serving descriptions of their involvement in the murders and thus misapprehended the basis for their actions. The judge relied on the expert's descriptions of the defendants' personalities, and their previous failures in treatment and probation as the basis for concluding that, while there was some evidence of amenability to treatment, the preponderance of the evidence supported the conclusion that neither defendant could be rehabilitated within the juvenile justice system. The judge was, of course, entitled to reject the expert's conclusion and to credit only parts of her opinion. See *Ward* v. *Commonwealth*, 407 Mass. 434, 438 (1990); *Commonwealth* v. *Matthews*, *supra* at 386.

[11]It cannot be doubted that a court-ordered psychiatric examination results in the compelled production of testimonial evidence, thus implicating the privileges against self-incrimination. The Commonwealth does not argue otherwise. We noted in *Blaisdell* v. *Commonwealth*, 372 Mass. 753, 759 (1977), that the "primary diagnostic source" in such an examination "is that which the examiner may glean from the nature and content of the defendant's statements. Not only may a defendant in such an examination

from an individual, whether in a civil or a criminal proceeding, that may be used against him in a criminal proceeding. See *Estelle* v. *Smith*, 451 U.S. 454, 462 (1981); *Attorney Gen.* v. *Colleton*, 387 Mass. 790, 792 (1982). The Commonwealth contends that the privileges against self-incrimination do not attach in a Part B hearing, because that hearing is not a criminal proceeding and only determines the forum in which the juvenile will be tried. In the Commonwealth's view, as long as any incriminating statements made by the juvenile during the compelled examination cannot be used in the subsequent proceeding adjudicating guilt, the privileges are protected adequately.

Reliance on this position is foreclosed by *Estelle* v. *Smith*, *supra*. In that case, the United States Supreme Court held that evidence obtained through a compelled psychiatric examination, supporting the conclusion that the defendant was a "severe sociopath" who would continue to engage in violent behavior, *id.* at 459, should not have been admitted during the penalty phase of the defendant's criminal trial, which occurred after he had been found guilty. The Court reasoned that admission of the psychiatrist's evidence violated the defendant's privilege against self-incrimination because the testimony, based on the defendant's statements to the psychiatrist, was offered in a proceeding affecting the penalty to be imposed on the defendant. *Estelle* v. *Smith*, *supra* at 462. The Court distinguished between the "limited, neutral purpose of determining [the defendant's] competency to stand trial," and the use made of the testimony by the State to enhance the defendant's penalty, a use that was "plainly adverse" to the defendant. *Id.* at 465. In addition, *Estelle* clearly states that the privilege against self-incrimination is not confined to statements that reveal involvement in criminal activity, but extends to statements that reveal informa-

be called on to recite his life history, emotions, feelings, thoughts and views as to relations with others, but, more importantly, to render the examination completely effective, he may well have to talk about the crime charged itself as well as acts, events and emotions relative to its commission." *Id.* at 759-760.

tion about a defendant's mental and emotional state where that state is in issue in a proceeding affecting the criminal penalty that may be imposed.

"[T]he civil-criminal distinction cannot be applied blindly to deny constitutional rights," *Commonwealth* v. *Travis*, 372 Mass. 238, 246 (1977), to juveniles facing detention by the Commonwealth. *In re Gault*, 387 U.S. 1 (1967). It minimizes the importance, and the potential impact, of transfer hearings to characterize them as civil proceedings that merely determine the proper forum for an adjudication of guilt. Part B hearings are fully adversary — the Commonwealth seeks transfer; the juvenile seeks to remain in the juvenile justice system. In a murder case, the outcome of these proceedings will, in the event of conviction, usually mean the difference between a limited period of confinement in a treatment setting and a lengthy term of imprisonment. In such a context, a psychiatrist's role cannot be described as "neutral," where he testifies in support of the Commonwealth's goal of transfer. These characteristics of a Part B hearing lead us to conclude that the privileges against self-incrimination, protected by the Federal and State Constitutions, foreclose a compelled psychiatric examination, where the juvenile does not seek to introduce his own psychiatric evidence. See *R.H.* v. *State*, 777 P.2d 204, 210-211 (Alaska Ct. App. 1989).

In this case, however, both defendants sought to present psychiatric evidence on their own behalf, based on personal discussions with their expert witnesses. In effect, both defendants sought to introduce evidence at their Part B hearings which included statements made by them to their expert witnesses. It is a basic principle of constitutional law that a defendant who speaks on his own behalf thereby gives up his privilege of silence and may be compelled to respond to questions posed by the State on matters reasonably related to the subject matter of his own testimony. See *Jenkins* v. *Anderson*, 447 U.S. 231, 235 (1980). See also *Estelle* v. *Smith*, *supra* at 466 n.10, 472 (suggesting that, if defendant sought to introduce psychiatric evidence during the penalty phase of

trial, he might be precluded from doing so unless he was also willing to be examined by psychiatrist for State).

In an analogous situation, Federal and State courts have concluded that a defendant who raises an insanity defense, and seeks to support it by the introduction of expert psychiatric testimony, can be compelled to submit to psychiatric examination at the request of the prosecution. *Blaisdell* v. *Commonwealth, supra* at 766, and cases cited. See *Estelle* v. *Smith, supra* at 465-466, and cases cited; *United States* v. *Byers,* 740 F.2d 1104 (D.C. Cir. 1984); *Battie* v. *Estelle,* 655 F.2d 692 (5th Cir. 1981); *State* v. *Manfredi,* 213 Conn. 500, cert. denied, 498 U.S. 818 (1990). At the core of the justifications supporting these decisions "is the unreasonable and debilitating effect it would have upon society's conduct of a fair inquiry," and the distorting effect on the fact finder's role, if only one party can introduce expert testimony on a crucial issue. *United States* v. *Byers, supra* at 1113, citing *Murphy* v. *Waterfront Comm'n of N.Y. Harbor,* 378 U.S. 52 (1964), and *Pope* v. *United States,* 372 F.2d 710 (8th Cir. 1967), vacated on other grounds, 392 U.S. 651 (1968). See *Blaisdell* v. *Commonwealth, supra* at 766.

The defendants contend that their situation differs from that of a defendant raising an insanity defense at trial. They point out that the *Blaisdell* case (in which we concluded that judge may order psychiatric examination of defendant who intends to offer psychiatric evidence in aid of insanity de-. fense) was premised on the ground that a defendant has a choice about whether to introduce psychiatric testimony at trial. He may, of course, defend himself on other grounds, and even if he does rely on an insanity defense, he may do so without the aid of psychiatric testimony. *Id.* at 764-766. In contrast, a Part B hearing focuses almost entirely on the juvenile's mental state, the statutory presumption places a burden of producing evidence on the juvenile, and among the factors the judge is required by statute to consider is "the success or lack of success of any past treatment efforts of the child." G. L. c. 119, § 61. The defendants contend the statutory provisions compel the juvenile to offer psychiatric testi-

mony to avoid transfer, and, therefore, the decision to do so cannot be considered a voluntary waiver of the privileges against self-incrimination.

We agree that a juvenile in a Part B hearing will often desire to present psychiatric evidence. The juvenile who does so has made a voluntary choice. There are other sources of probative evidence available to the juvenile, bearing on his dangerousness to the public and amenability to treatment, that may be introduced without implicating the privileges against self-incrimination. These include, but are not limited to, records of past treatment, school and probation records, Department of Youth Services records, Department of Social Services records, and testimony by a probation officer, Department of Social Services or Youth Services employees, teachers, friends, or family members. See *Commonwealth v. Costello*, 392 Mass. 393 (1984); *Commonwealth v. Watson*, 388 Mass. 536 (1983); *A Juvenile v. Commonwealth*, 380 Mass. 552 (1980).

"[T]he Constitution does not forbid 'every government-imposed choice in the criminal process that has the effect of discouraging the exercise of constitutional rights,' " *Jenkins v. Anderson, supra* at 236, quoting *Chaffin v. Stynchcombe*, 412 U.S. 17, 30 (1973), as long as the policy behind the right affected is not impaired. *Jenkins, supra.* It has long been recognized that "[o]nce a defendant decides to testify, 'the interests of the other party and regard for the function of courts of justice to ascertain the truth become relevant, and prevail in the balance of considerations determining the scope and limits of the privilege against self-incrimination.' " *Id.* at 238, quoting *Brown v. United States*, 356 U.S. 148, 156 (1958). These principles apply here. We conclude that a juvenile defendant, who voluntarily chooses at a Part B hearing to present expert psychiatric evidence which includes the juvenile's own statements, is not denied his constitutional privileges against self-incrimination if he is ordered to submit to an examination by a psychiatrist retained by the Commonwealth.

The defendants also contend that the Juvenile Court judge lacked authority to grant the Commonwealth's motions for compelled psychiatric examinations. We think the Legislature intended to grant such authority from the nature of the determination that G. L. c. 119, § 61, requires a Juvenile Court judge to make, and the factors and the evidence the judge is required to consider, which directly involve, if the juvenile chooses, expert psychiatric testimony. See Rule 207 of the Special Rules of the District Courts (1992) ("A child between seven and seventeen years of age against whom a complaint is made that he or she is a wayward or delinquent child, shall be represented by counsel at every stage of the proceedings if it shall appear to the court that such child may be committed to the custody of the Youth Service Board as the result of such complaint. The court may require psychological testing and psychiatric examination whenever expedient").

This authority is, of course, limited by the constitutional constraints discussed above. No examination may be ordered unless the Juvenile Court judge determines that the juvenile intends to offer at his Part B hearing psychiatric evidence based on his own statements or there is a reasonable likelihood that the juvenile will offer such evidence. The judge, on motion by the Commonwealth or by his own order, may direct the juvenile to disclose whether he intends to offer such evidence. Disclosure should be sufficiently in advance of the hearing to permit the Commonwealth to conduct its own examination. In addition, the order authorizing such an examination must contain limits on the use of such testimony required by State and Federal constitutional concerns. The juvenile's decision to introduce psychiatric evidence in a transfer hearing is limited to the Part B hearing. The substance of the juvenile's statements is not admissible at any proceeding adjudicating his guilt. In other respects, the requirements and, if warranted, the sanctions contained in Mass. R. Crim. P. 14 (b) (2), 378 Mass. 874 (1979), are to be applied.

3. *Disposition.* These are the first cases reaching us under the new § 61. Because the issues considered are novel, fairness dictates that the defendants be given an opportunity to decide whether they wish to offer the testimony of their psychiatric experts to the Juvenile Court judge in view of our conclusion that, if they plan to do so, they can be made to undergo examinations by an expert retained by the Commonwealth. The cases are to be taken up again in the Superior Court. The Superior Court judge's ruling that the new § 61 does not violate the defendants' constitutional rights of due process and equal protection is correct, and the defendants' motions to dismiss on those grounds are to be denied. The defendants are to advise the Superior Court judge whether they plan to introduce the psychiatric evidence that was excluded at their transfer hearings. If the defendants choose not to offer psychiatric evidence, the balance of their motions to dismiss is to be denied, and the cases are to proceed in the usual course in the Superior Court. If the defendants indicate their desire to offer expert psychiatric evidence, the cases are to be returned to the Juvenile Court for further proceedings consistent with this opinion which may include, among other things, an examination of the defendants by the Commonwealth's expert, the introduction of further psychiatric and other evidence, and a redetermination by the Juvenile Court judge of the issues pertaining to transfer.

*So ordered.*