COMMONWEALTH *vs.* EDWARD S. O'BRIEN.

Middlesex. September 10, 1996. - December 6, 1996.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, & FRIED, JJ.

*Delinquent Child. Practice, Criminal,* Juvenile delinquency proceeding, Transfer hearing. *Evidence,* Juvenile delinquency, Judicial discretion, Judicial notice, Presumptions and burden of proof, Expert opinion. *Statute,* Construction. *Judge. Words,* "Treatment," "Rehabilitation."

In a first degree murder case in which the defendant was a juvenile at the time of the homicide and in which the Commonwealth proceeded by indictment, the judge conducting a transfer hearing under G. L. c. 119, § 61, as then in effect, applied an erroneous standard in making his decision [846-847], improperly relied on evidence that was not part of the record [847-849], made insufficient findings on the burden of production and persuasion [849-850], erroneously excluded relevant evidence consisting of an addendum to a medical report and prohibited cross-examination based on it [850-852], and incorrectly excluded expert testimony about the nature of the crime that was relevant to the issue of the defendant's dangerousness [852-854]: the case was remanded for a new transfer hearing [855].

COMPLAINT received and sworn to in the Somerville Division of the District Court Department on July 26, 1995.

INDICTMENT found and returned in the Superior Court Department on August 11, 1995.

A transfer hearing was held in the Somerville Division of the District Court Department before *Paul P. Heffernan,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Thomas F. Reilly,* District Attorney (*Sabita Singh,* Assistant District Attorney, with him) for the Commonwealth.

*Robert A. George* (*Robert N. Launie* with him) for the defendant.

LYNCH, J. The defendant in this case is charged with murder. G. L. c. 265, § 1 (1994 ed.). At the time of the homicide,

Commonwealth *v.* O'Brien.

the defendant was age fifteen years and five months.[1] Pursuant to G. L. c. 119, § 61 (1994 ed.),[2] the Commonwealth moved to transfer the defendant to the Superior Court for trial as an adult. A Middlesex County grand jury then returned an indictment, charging the defendant with the murder of Janet Downing.[3] Because the Commonwealth chose to indict the defendant, no probable cause (Part A hearing) occurred but from January 9 through January 22, 1996, a transfer hearing (Part B hearing) was held. Following the transfer hearing, the judge denied the Commonwealth's motion to transfer the defendant to the Superior Court for trial, and the Commonwealth appealed. We granted the Commonwealth's application for direct appellate review and now conclude that the judge applied an erroneous standard in determining whether the defendant was amenable to rehabilitation, improperly relied on evidence not part of the record, and improperly limited the admission of expert testimony.

---

[1]The defendant's date of birth is January 28, 1980.

[2]At the time of the defendant's transfer hearing, G. L. c. 119, § 61 (1994 ed.), provided in part as follows: "If a child is charged with murder in the first or second degree, manslaughter, or any violation of section eighteen, twenty-two, twenty-two A or twenty-six of chapter two hundred and sixty-five, or section fourteen of chapter two hundred and sixty-six, and a finding of probable cause has been made, there shall exist a rebuttable presumption that the child presents a significant danger to the public and that such child is not amenable to rehabilitation within the juvenile justice system."

The existence of probable cause can be determined at a hearing known as a "Part A hearing." If probable cause is found, dangerousness and amenability to treatment are then determined at a hearing known as a "Part B hearing." *Commonwealth* v. *Wayne W.*, 414 Mass. 218, 219-220 n.2 (1993).

Section 61 has been repealed effective October 1, 1996, and the statute now provides that any person between the ages of fourteen and seventeen years who is charged with committing murder in the first or second degree shall be treated in accordance with the usual course and manner of criminal proceedings. St. 1996, c. 200, § 7.

[3]General Laws c. 119, § 61, also provided that, "[i]f the offense alleged is murder in the first or second degree, the commonwealth may proceed by filing a complaint in juvenile court or in a juvenile session of a district court, as the case may be, or by indictment as provided by chapter two hundred and seventy seven."

Accordingly, we reverse the order denying transfer and remand the case for further proceedings.[4]

We summarize the evidence presented to the grand jury. On the evening of Sunday, July 23, 1995, the body of Janet Downing was found bleeding in her Somerville home. The victim had suffered sixty-six stab wounds and thirty-one slash wounds. She was taken to the hospital, where she was pronounced dead. Blood was found in various locations throughout the house.[5] The defendant's bloody fingerprint and bloody thumbprint were recovered from inside the house. In addition, the hilt of a knife, similar to a loose hilt on a knife the defendant had shown a clerk at a convenience store the night before, was found in the victim's house.

Earlier that evening, a group of friends including the defendant had been visiting with the victim's son at the Downing home. The defendant asked the victim's son what was wrong with the lock on a door which opened from the kitchen to the deck. The victim's son explained that the lock on the doorknob was broken, but showed the defendant how to operate the deadbolt lock. The group then left the Downing home for another location; the defendant, however, declined to accompany them and instead walked toward his own home. Later that same evening, a friend of the defendant saw him acting strangely, close to the Downing house. Around the time that the victim's son discovered the victim, the defendant, sweating profusely and bleeding from his hand and leg, entered a convenience store where he worked and told the store clerk that he had been mugged. Blood taken from the

[4]Both parties have moved to correct the record pursuant to Mass. R. A. P. 8 (e), as amended, 378 Mass. 932 (1979). A single justice of this court referred to the full court two issues: (1) whether the Commonwealth should be allowed to correct the transcript of the September 22, 1995, hearing to reflect that no representative of the Commonwealth was present at that hearing when the judge allowed the defendant's motion for funds; and (2) whether the defendant had a right to a hearing on a motion challenging the Commonwealth's underlying factual predicates for the Commonwealth's argument that, unbeknownst to the Commonwealth, the judge had allowed the defendant's motion for funds and the Commonwealth's argument that the judge impermissibly interfered with Dr. Barnum's evaluation of the defendant. Because of our disposition of this case, we conclude that there is no need for a hearing on the defendant's motion, nor is there a need to correct the record. See notes 11, 22, and 23, *infra.*

[5]After the grand jury proceedings, this blood was tested and found to be consistent with the blood of the victim and the defendant.

defendant's shin that night matched the blood type of the victim. Later, when the defendant took the police to the location where he claims to have been mugged, the police found no signs of a scuffle, weapon, or blood.

The grand jury indicted the defendant for the murder of Janet Downing. At the transfer hearing, Dr. Richard Barnum, a court-appointed psychiatrist, testified that the defendant "would present elevated risk for dangerous behavior and that elevation would be significant" if the defendant was not in custody. Dr. Barnum further testified, however, that the defendant had a "good prognosis" for rehabilitation.

Carlo Morrissey, the director of client services of the Department of Youth Services (DYS) was called by the court. Morrissey testified regarding current and future treatment services for juveniles adjudicated delinquent by reason of murder. The defendant also presented the testimony of three witnesses associated with DYS. Finally, the defendant presented twelve witnesses who testified that the defendant was of general good character.

The Commonwealth introduced evidence of the nature, circumstances, and seriousness of the crime. The Commonwealth also presented evidence tending to show that the defendant had an obsessive sexual interest in the victim, which he demonstrated by preoccupation with her activities and by peeking in her windows to watch her undress. Finally, the Commonwealth offered the expert testimony of Dr. Robert Kinscherff, a forensic psychologist, and Dr. Donald Condie, a psychiatrist experienced in dealing with children and adolescents. Doctors Condie and Kinscherff testified that the nature of the crime, multiple stab wounds including a number of wounds below her breasts, but no stab wounds to the breasts, and cuts on the victim's brassiere, indicated both overkill and a sexually sadistic homicide. There was testimony that, as a group, juveniles who commit sexually sadistic homicides are less likely to be treated effectively and that sadistic patterns of behavior were not successfully treated by DYS. After hearing all the evidence, the judge concluded that the defendant had rebutted the presumption that he was not amenable to rehabilitation, and declined to transfer the defendant to the Superior Court for trial as an adult.

The Commonwealth argues that the judge employed an incorrect legal standard in making the transfer decision. The

Commonwealth further contends that the judge conducted improper ex parte hearings with both defense counsel and a court-appointed expert, impermissibly interfered with the defendant's evaluation, and made erroneous evidentiary rulings which deprived the Commonwealth of the opportunity to elicit expert testimony.

*Discussion.* A transfer hearing is held to determine whether "the child presents a danger to the public, and whether the child is amenable to rehabilitation within the juvenile justice system." G. L. c. 119, § 61. There is a rebuttable presumption that a juvenile charged with murder is dangerous to the public and not amenable to rehabilitation. *Commonwealth* v. *Clifford C.,* 415 Mass. 38, 42 (1993). Because of the statutory presumption, in cases involving murder or other violent crime, "the juvenile [has] the initial burden of producing evidence showing that he does not present a significant danger to the public and is amenable to rehabilitation within the juvenile justice system." *Commonwealth* v. *Wayne W.,* 414 Mass. 218, 222 (1993). If the juvenile meets this initial burden, the Commonwealth must show by a preponderance of the evidence that the juvenile presents a danger to the public and is not amenable to rehabilitation. See *Commonwealth* v. *Clifford C., supra; Commonwealth* v. *Wayne W., supra.* "[T]he Legislature clearly has indicated . . . that transfer should occur more readily in cases in which a juvenile is charged with murder or another crime involving violence to a person." *Commonwealth* v. *Clifford C., supra* at 42.

A judge has wide discretion in determining whether a juvenile should remain within the juvenile system or be tried as an adult. See *id.* at 42-43; *Commonwealth* v. *DiBenedetto,* 414 Mass. 37, 48 (1992); *Commonwealth* v. *Matthews,* 406 Mass. 380, 383 (1990); *A Juvenile* v. *Commonwealth,* 370 Mass. 272, 282 (1976). The judge must make written findings regarding the juvenile's dangerousness and amenability to rehabilitation. "These two written findings must be supported by subsidiary findings which should be derived from consideration of . . . statutorily delineated factors."[6] *Commonwealth* v. *Costello,* 392 Mass. 393, 396 (1984). There is no de novo review at the

[6]Section 61 of G. L. c. 119 set forth the standards governing a Part B transfer hearing. In making his decision, the judge had to consider, but was not limited to, evidence of eight factors: (1) the nature, circumstances, and seriousness of the alleged offense; (2) the child's court and delinquency rec-

appellate level. Rather, we must determine whether there has been a "material failing in the prescribed steps leading to the issuance of the order of transfer." *Commonwealth* v. *Matthews, supra* at 384. Absent an abuse of discretion, we will not disturb the judge's findings. *Commonwealth* v. *DiBenedetto, supra.*

1. *The standard.* We agree with the Commonwealth that the judge applied an erroneous standard in making his transfer decision. General Laws c. 119, § 61, required the judge to decide whether a juvenile "presents a danger to the public, and whether the child is amenable to *rehabilitation*" (emphasis added). In the portion of his order entitled "Findings," however, the judge stated that "[t]he credible testimony regarding the clinical, social, and legal factors coupled with security systems now in place to deal with children who are found Delinquent of Murder leads me to conclude that the presumption flowing from the indictment that the defendant is not Amenable to *Treatment* has been rebutted, and that this defendant can be *treated* within the Juvenile Justice System" (emphasis added).[7]

Treatment is not the same as rehabilitation. It is fundamental that "[w]here the language of a statute is plain, there is no room for speculation as to its meaning." *Massachusetts Bay Transp. Auth.* v. *Massachusetts Bay Transp. Auth. Retirement Bd.*, 397 Mass. 734, 738 (1986). Moreover, our cases have made clear the distinction between rehabilitation and treatment, holding that, while a juvenile can be treated within the juvenile justice system, transfer is still appropriate if the juvenile cannot be rehabilitated within the time that the juvenile can be kept within the juvenile justice system. See *Commonwealth* v. *Matthews, supra* at 387 (transfer statute only

---

ord; (3) the child's age and maturity; (4) the family, school, and social history of the child; (5) the success or lack of success of any past treatment efforts of the child; (6) the nature of services available through the juvenile justice system; (7) the adequate protection of the public; and (8) the likelihood of rehabilitation of the child. Section 61 has since been repealed by St. 1996, c. 200, § 7.

[7]The judge's order makes several other references to the defendant's amenability to treatment while using the word rehabilitation only once when noting that it was difficult to consider the suggestion that "rehabilitation could only be undertaken if the defendant implicated himself and demonstrated 'remorse' for the crime which remains unproven" given that the defendant has not yet been adjudicated guilty and has rights against self-incrimination that must be protected.

requires judge "to focus on the minor's potential for success-ful treatment before the age of majority within existing juve-nile facilities"); *A Juvenile* v. *Commonwealth, supra* ("there must . . . be a finding that the juvenile cannot be rehabilitated within the present juvenile structure"). If convicted of mur-der, the defendant would be confined for a minimum of from fifteen to twenty years. G. L. c. 119, § 72 (1994 ed.).[8] The de-fendant, however, could only be held within the juvenile system until his twenty-first birthday and the judge in his findings recognized that "[a]s a practical matter the only definable treatment which would be available to the juvenile would be at the Department of Youth Services."[9] During the course of the transfer hearing the judge, the experts, and the attorneys used the terms "treatment" and "rehabilitation" without differentiation.[10] That does not relieve the judge of the obligation to indicate clearly in his findings that he found that the defendant could be rehabilitated as opposed to merely treated, and that such rehabilitation would occur during the limited time that treatment was available to him.

2. *The judge's findings.* In the portion of his order titled "Considerations" the judge stated that "[i]t is essential in this case to be as convinced as is humanly possible that the defen-dant is not suffering from a mental illness or defect. Dr. Bar-num after exhaustive evaluation concludes that he is not so afflicted." The judge regarded this conclusion as paramount in his determination that the defendant could be rehabili-

---

[8]General Laws c. 119, § 72, has also been amended since the time of this proceeding. St. 1996, c. 200, § 13.

[9]Dr. Barnum's written report stated that the Plymouth county house of correction, where it appears DYS secures all juveniles adjudicated guilty of murder in the first or second degree, "affords several fundamental difficul-ties in providing comprehensive rehabilitative services." In addition, Dr. Barnum testified that the hypothetical treatment program he could then es-tablish for the defendant would not be available to anyone adjudicated guilty of murder in the first or second degree.

[10]For example, in his opening remarks the judge stated that "an indict-ment has been returned by the Grand Jury hereby creating [a] rebuttable presumption that Edward O'Brien, the defendant in this matter, is danger-ous and also is not currently amenable to rehabilitation. That being the case, we will proceed with the burden of proof being with the Defense." In addition, the judge, in sustaining an objection made by defense counsel stated that "[t]here is a presumption that this gentleman is dangerous and that he is not amenable to rehabilitation. We are here today to determine whether or not he will remain in the Juvenile Justice System."

tated.[11] Apparently relying on testimony he had heard at a prior bail hearing,[12] the judge then stated that "[i]t should also be noted that Dr. Paul A. Spiers, Ph.D . . . who tested the defendant also found no indication of mental illness or defect." As the Commonwealth argues, this finding was flawed because the judge erroneously relied on the opinion of Dr. Spiers that was never in evidence.

A judge's reliance on information that is not part of the record implicates fundamental fairness concerns. See *White* v. *White*, 40 Mass. App. Ct. 132, 141-142 (1996) (substantial error where probate judge allowed adult witness to testify in private where such evidence clearly influenced decision). Thus, "[a] judge may not rely on his private knowledge of particular facts that are not matters of which he can take judicial notice." *Furtado* v. *Furtado*, 380 Mass. 137, 140 n.1 (1980). A judge may not take judicial notice of facts or evi-

---

[11]It appears that the judge was relying on both Dr. Barnum's testimony and his written report in which he concluded that, based on the information available to him at the time of the original report, the defendant "[did] not present with any clear specific psychiatric disorder for which specific treatment is indicated" and did not suffer from a serious ingrained deviance in personality deviance." Such a finding was apparently important to the judge because, according to Dr. Barnum's report, a serious personality disorder would make it more difficult to treat the defendant effectively. There was no suggestion that there existed any mental defect such that the defendant did not understand the nature of his acts.

[12]At a prior bail hearing, Dr. Spiers had testified that he had not found any evidence that the defendant suffered from psychiatric illness. The judge had limited the testimony of Dr. Spiers, however, because part of the examination had been conducted while the defendant was under the influence of sodium amytal. Neither party argues the correctness of that ruling. The Commonwealth, however, makes two other arguments regarding Dr. Spiers' examination and testimony: First, it was prejudiced by an improper ex parte hearing between the defendant's counsel and the judge during which the judge granted the defendant's motion for funds for such testing and motion to impound; second, it was denied access to the records on which Dr. Spiers relied in reaching his conclusions and was therefore prevented from conducting a thorough cross-examination at the bail hearing where Dr. Spiers testified. The defendant claims that: there was no improper ex parte hearing; the records were fully available to the Commonwealth on its own demand; and it was within the judge's discretion to require disclosure of the underlying facts. Because we conclude that the judge relied on the testimony of Dr. Spiers for a significant finding that was not a part of the record, we do not consider whether the Commonwealth was additionally prejudiced by an alleged improper ex parte hearing and inability to cross-examine Dr. Spiers thoroughly.

dence brought out at a prior hearing that are not also admitted in evidence at the current hearing. *Howe* v. *Prokop,* 21 Mass. App. Ct. 919 (1985). See *Nantucket* v. *Beinecke,* 379 Mass. 345, 353 (1979) (improper use of judicial notice tainted ultimate conclusion reached by judge and cannot stand); *Andrews, petitioner,* 368 Mass. 468, 477 (1975). "Where the judge is the trier of fact, he must be most scrupulous both to avoid losing his impartiality and to maintain his unfamiliarity with disputed matters which may come before him and with extraneous matters which should not be known by him." *Furtado* v. *Furtado, supra* at 151-152. While it is true that the judge also credited Dr. Barnum's conclusion that the defendant did not suffer from a mental disease or defect,[13] the presence or absence of mental disease was obviously a factor that weighed heavily on the judge's conclusion that the defendant was amenable to rehabilitation within the juvenile justice system.[14] The judge should not have gone outside the record to bolster his conclusion on a factor that he regarded as of paramount importance. Although we might not reverse on this ground alone, it is a procedural misstep that we rely on in reaching the conclusion that there must be further proceedings in this matter.

The judge's findings are also insufficient in regard to the burden of production and persuasion applicable to transfer hearings. The judge, in the portion of his order entitled "Findings," stated that he concluded that "the presumption flowing from the indictment that the defendant is not Amenable to Treatment has been rebutted, and that this defendant can be treated within the Juvenile Justice System." It is true that, once the defendant has met his burden of production in regard to the critical factors, the statutory presumption has been

[13]The Commonwealth argues that there is no support in the record for drawing this conclusion from Dr. Barnum's testimony. Our review of the record, however, leads us to conclude that the judge was warranted in reaching this conclusion.

[14]The Commonwealth argues that the judge improperly emphasized the presence or absence of a mental illness. It is clear, however, that a judge is not limited to considering only the eight factors listed in the statute. See *Commonwealth* v. *Costello,* 392 Mass. 393, 396-97 (1984); *A Juvenile* v. *Commonwealth,* 370 Mass. 272, 282 (1976).

rebutted, and has no remaining evidentiary force.[15] *Commonwealth* v. *Wayne W.*, 414 Mass. 218, 222 n.5 (1993). That the defendant has rebutted the presumption, however, does not end the inquiry. The Commonwealth retains the burden of persuasion and still has the opportunity to show by a preponderance of the evidence that the defendant is danger-ous and not amenable to rehabilitation. See *Commonwealth* v. *Clifford C.*, 415 Mass. 38, 42 (1993); *Commonwealth* v. *Wayne W.*, *supra* at 222.[16] While the defendant argues that, because the judge found that the defendant rebutted the presumption, he must have "gone on to establish that the juvenile was ame-nable to rehabilitation," it does not follow that the Com-monwealth failed to meet its burden of persuasion simply because the defendant rebutted the presumption of noname-nability which flowed from the statute. On such a significant issue the judge's finding should be clear. The judge may have thought that his duty to weigh the evidence ended when the defendant rebutted the statutory presumption. Thus, the judge's failure to consider whether the Commonwealth met its burden of persuasion after the defendant rebutted the presumption of nonamenability to rehabilitation constitutes a "material failing in the prescribed steps leading to the issu-ance of the order of transfer." *Commonwealth* v. *Matthews*, 406 Mass. 380, 384 (1990).

3. *The Barnum addendum.* The Commonwealth also argues that the judge erroneously excluded an addendum Dr. Bar-num filed to supplement his original report. Dr. Barnum's original report of December 20, 1995, became an exhibit dur-ing his direct testimony at the transfer hearing. The Com-monwealth then conveyed new information to Dr. Barnum

---

[15]The Commonwealth also argues that the defendant failed to rebut the presumption because all of the evidence concerning amenability, including Dr. Barnum's opinion, was speculative, and that the judge was required as a matter of law to transfer the defendant. In light of our disposition of this case, we need not consider this argument.

[16]The Commonwealth raises several other arguments regarding the judge's findings. We conclude they are without merit. The judge's other findings do not indicate that the judge was using a "checklist approach" nor does it appear that the judge's findings "reflect[ed] no reasoned consideration of the evidence" regarding the nature, circumstances and seriousness of the offense or were unsupported by the record.

during a meeting on January 5, 1996.[17] In light of this new information, Dr. Barnum generated a six-page addendum to his original report. The Commonwealth sought to introduce the addendum in evidence on several occasions. The judge declined to accept this addendum as an exhibit and refused to permit cross-examination of Dr. Barnum on the contents of the addendum on the grounds that the additional information received by Dr. Barnum was "speculative, if not hypothetical" and that there was "no direct testimony in evidence" to support the additional information.[18] This was error. There was testimony by several witnesses regarding most, if not all,

[17]The prosecutor told Dr. Barnum that: (1) a newspaper article had been found in the defendant's room at the time of his arrest describing another murder committed by an adolescent; (2) the defendant had obtained keys to St. Joseph's School when he was a student there and entered the school illicitly; (3) the defendant had been stealing money from his grandfather, had told friends about this, had otherwise unexplained sums of money, and had bought some things for his friends; (4) the victim had begun to report missing money; (5) the defendant told friends about looking through the window of the victim to watch her undress; (6) the defendant, along with some friends, had looked through the window of another woman to watch her undress shortly before the murder; and (7) the defendant had been questioned by police regarding the burning of a mailbox.

The defendant argues that the meeting between the prosecutor and Dr. Barnum after Dr. Barnum submitted his original report was "ex parte" and suggests that it was somehow improper. The defendant cites no cases and makes no legal arguments regarding this issue. Such a presentation of the issues does not rise to the level of appellate argument. See *Lolos* v. *Berlin*, 338 Mass. 10, 13-14 (1958) ("a terse and very sketchy reference" to the issues is insufficient; requirement of argument "founded on the sound principle that the right of a party to have this court consider a point entails a duty; that duty is to assist the court with argument and appropriate citation of authority"); *Derman Rug Co.* v. *Ruderman*, 4 Mass. App. Ct. 437, 446 (1976) ("The four-sentence argument on this point . . . does not rise to the level of appellate argument and is of no assistance to us").

[18]The Commonwealth was allowed to ask, over objection, certain preliminary, hypothetical questions about behavior that might indicate more serious antisocial characteristics and sexual deviance. However, because the addendum was not admitted in evidence, the Commonwealth was not able to inquire of Dr. Barnum how his original opinion was affected by this subsequent information, nor was the Commonwealth able to ask any nonhypothetical questions about how this new information might change Dr. Barnum's original opinion regarding the defendant's prospects for rehabilitation.

of the incidents that were the basis for the addendum.[19] More-over, "an expert [may] base an opinion on facts or data not in evidence if the facts or data are independently admissible and are a permissible basis for an expert to consider in formulat-ing an opinion. [This] . . . eliminate[s] the necessity of pro-ducing exhibits and witnesses whose sole function is to construct a proper foundation for the expert's opinion." *Department of Youth Servs.* v. *A Juvenile,* 398 Mass. 516, 531 (1986).

The addendum clearly affected the strength of Dr. Bar-num's opinion on which the judge relied. While the defendant argues that the addendum did not change Dr. Barnum's ultimate opinion, in his addendum, Dr. Barnum stated that, "if true, these reports suggest the presence of greater deviance in [the defendant's] emotional functioning than was apparent from the information on which my original report was based." Furthermore, the addendum related to many factors that the statute required be given specific consideration. The Com-monwealth was entitled to explore any potential weaknesses in the original report by introducing the addendum and examining Dr. Barnum regarding its contents. The addendum should have been admitted and cross-examination based on it should have been permitted.[20]

4. *Testimony of McCrary.* The Commonwealth also argues

---

[19]The victim's son testified that: he and the defendant were able to enter St. Joseph's school using a key the defendant had taken from the janitor's closet; the defendant had large sums of money that the defendant told him he got from his grandfather's retirement money; his mother thought some-one was coming into the house; and the defendant told his friend that he watched his mother undress.

A friend of the defendant testified that: the defendant told him he liked to go into an elderly neighbor's home and look around; the defendant had large sums of money; and he and the defendant had looked at a neighbor undressing and the defendant told him he had looked at her undress before.

Finally, another son of the victim testified that the defendant: talked about wanting to go inside the home of an elderly neighbor; had a lot of money and told him he got it from his grandfather's retirement fund; bought a gift for him and some other friends; told him he watched a neighbor undress and described her breasts; and had called while the son was changing a light bulb in his mother's room to find out what was going on in his mother's room.

[20]The Commonwealth also argues that: it did not assent to be bound by Dr. Barnum's opinion; did not receive access to the raw data of Dr. Bar-num and his associate, Dr. Lynda D. Field, sufficiently in advance of the hearing to permit the Commonwealth to conduct its own evaluation and

that it was error for the judge to exclude the testimony of former Federal Bureau of Investigation special agent Gregg McCrary, an expert in criminal investigative analysis, who had reviewed all of the evidence about the circumstances of the crime. The Commonwealth argued that his testimony was relevant because Dr. Barnum testified that one of the most important factors in assessing future dangerousness and the extent of the defendant's underlying pathology is the nature of the crime itself and the extent of the defendant's involvement. The judge, while not addressing McCrary's qualifications, sustained the objection to McCrary's testimony on the ground that it was not the appropriate forum to hear the testimony.

Ordinarily a judge has broad discretion with respect to the admission of expert testimony and will be reversed only in cases of abuse of discretion or error of law. See *Commonwealth* v. *Pikul,* 400 Mass. 550, 553 (1987); *Commonwealth* v. *Devlin,* 365 Mass. 149, 152 (1974). In a transfer hearing, however, the admission of evidence is guided by principles of fundamental fairness. *Commonwealth* v. *Watson,* 388 Mass. 536, 540 (1983). In view of Dr. Barnum's opinion, on which the judge relied, McCrary's testimony was relevant to the defendant's dangerousness and amenability to rehabilitation in the juvenile justice system. Dr. Barnum testified that the nature of the defendant's involvement in the offense is an important factor in determining the extent of his pathology and amenability to rehabilitation. He placed importance on the defendant's motivation and state of mind in assessing the likelihood of rehabilitation, but he could not obtain this information from the defendant. McCrary's testimony was intended to fill this gap. It was offered to show, inter alia, the planning, deliberation, and aggressiveness that was involved in the crime. It was also offered to show the sexual nature of the crime. For example, McCrary's testimony would support the inference that the victim's brassiere was removed or dislodged before the injuries were inflicted; the brassiere itself was stabbed while dislodged and then replaced after the attack.

that the judge improperly took judicial notice of the fact that "more than one evaluation of children with a one-year period tend [*sic*] to be less than conclusive and may be counter-productive." In light of our disposition of this case, we need not decide these issues.

In other circumstances we have recognized that relevant evidence should be admitted unless there is a quite satisfactory reason for excluding it. *DeJesus* v. *Yogel,* 404 Mass. 44, 47 (1989).

The defendant correctly points out "that experts' opinions are not binding on the trier of fact, who may accept or reject them in whole or in part." *Commonwealth* v. *Hawkesworth,* 405 Mass. 664, 672 (1989). It does not follow, however, that a judge in a transfer hearing may exclude relevant expert testimony with impunity. Even where a judge is sitting without a jury, he should recognize the difference between the admissibility and the weight of the evidence. *Sacco* v. *Roupenian,* 409 Mass. 25, 30 (1990) (flaws in evidence explored on cross-examination to affect weight of evidence, but do not affect admissibility of such evidence). "[T]he judge could have benefited from a range of professional opinions addressing the juvenile's amenability to rehabilitation." *Commonwealth* v. *Clifford C.,* 415 Mass. 38, 47 (1993). Since there are to be further proceedings, we suggest that McCrary be allowed to testify on what the crime scene reveals as to how the homicide occurred if a proper foundation is established and provided that no satisfactory argument is advanced in support of exclusion.[21]

5. Finally, the Commonwealth contends that, without the Commonwealth's knowledge, the judge ordered Dr. Barnum to make no inquiries of the defendant about the circumstances of the crime.[22] The defendant argues that no such communication occurred, and that any objection to the communication is not timely. The record does not clearly demonstrate whether the judge's directions to Dr. Barnum were made with or without the knowledge of both parties. Even assuming that the Commonwealth had no prior knowledge, it was

---

[21]The defendant now argues that the judge could have, although he did not, excluded the testimony of McCrary because of the Commonwealth's late disclosure of McCrary's proposed testimony.

[22]When a fact finder discusses factual matters of a case with a nonparty in the absence of one or more parties, the communication is more accurately referred to as one that is extra record, not ex parte. See *Duro* v. *Duro,* 392 Mass. 574, 576 n.4 (1984). An extra record communication, however, implicates many of the same fairness and due process concerns that result from an ex parte communication. *Id.*

not prejudiced because Dr. Barnum did in fact inquire as to the circumstances of the crime.[23] [24]

It is not necessary that we comment on the further arguments raised by the Commonwealth both because they are of dubious significance and because the issues are unlikely to arise in a new hearing.

The case is remanded to the juvenile session of the Somerville District Court for further proceedings consistent with this opinion.

*So ordered.*

---

[23]The prosecutor himself stated: "[I]t does appear that Dr. Barnum does — did attempt to make some inquiry and was unsuccessful at it. That — is my memory of what happened there . . . ."

[24]We note, however, that a judge engaging in extra record communications with court-appointed experts must exercise special care. Rule 706 (a) of the Federal Rules of Evidence, on which Proposed Massachusetts Rule of Evidence 706 is based, requires that appointed expert witnesses be informed of duties in writing or at a conference in which the parties shall have the opportunity to participate. While the proposed rule does not explicitly contain a requirement, such a rule would prevent confusion and ensure that all parties are aware of the expert's assignments and instructions and could make timely objections if they wished.