CHARLES C., a juvenile,[1] *vs.* COMMONWEALTH.

Suffolk. February 2, 1993. - April 20, 1993.

Present: LIACOS, CJ., WILKINS, ABRAMS, NOLAN, O'CONNOR, & GREANEY, JJ

*Delinquent Child. Jurisdiction*, Delinquent child. *Juvenile Court*, Jurisdiction. *District Court*, Jurisdiction. *Superior Court*, Jurisdiction. *Statute*, Construction. *Practice, Criminal*, Juvenile delinquency proceeding, Transfer hearing, Indictment. *Waiver. Due Process of Law*, Juvenile delinquency proceeding. *Constitutional Law*, Equal protection of laws.

Discussion of the amendments to G. L. c. 119, §§ 61 and 72, effected by St. 1991, c. 488, §§ 3 and 7, with respect to juveniles charged with murder. [59-63]

The provisions of G. L. c. 119, § 61, as amended by St. 1991, c. 488, § 3, that enlarged the jurisdiction of the Juvenile Court and the juvenile sessions of the District Court to include juvenile murder cases and revised the procedure for initiating a murder charge to include the use of an indictment, do not conflict with the provisions of G. L. c. 119, § 74. [63-64]

Where the Legislature amended G. L. c. 119, §§ 61 and 72, by St. 1991, c. 488, §§ 3 and 7; G. L. c. 218, § 27, by St. 1991, c. 488, § 9; and G. L. c. 263, § 4, by St. 1991, c. 488, § 10, to increase the jurisdiction of the Juvenile Court and the juvenile sessions of the District Court over juveniles charged with murder, those courts, by implication, have the power to accept an indictment returned in the first instance in the Superior Court and the indictment then serves as the charging document [65-66]; and by the same principles, the Superior Court has the authority to transmit the indictment of a juvenile charged with murder to the appropriate Juvenile Court or juvenile session [66-67].

The provisions of G. L. c. 119, § 61, as amended by St. 1991, c. 488, § 3, that substitute a grand jury indictment for a probable cause (Part A) hearing in the cases of juveniles charged with murder do not violate the juvenile's Federal due process rights. [67-69]

The different treatment accorded a juvenile charged with murder under G. L. c. 119, §§ 61 and 72, including the substitution of an indictment for a probable cause (Part A) hearing and enhanced mandatory penal-

---

[1]A fictitious name is used in this opinion for the juvenile.

ties upon conviction, is reasonably related to a legitimate legislative goal and does not violate the Federal constitutional guarantee of equal protection of the laws. [69-70]

Any ambiguity in the provisions of St. 1991, c. 488, § 3, amending G. L. c. 119, § 61, that might require clarification in procedural aspects does not warrant the application of the rule of lenity to make the entire Legislation ineffective. [70]

INDICTMENT found and returned in the Superior Court Department on January 23, 1992.

A motion by the Commonwealth to transmit the indictment to the Juvenile Court Department was heard by *John M. Xifaras*, J.

A request for leave to appeal was considered by *Wilkins*, J.

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on October 19, 1992.

The case was reported by *Wilkins*, J.

The two matters were consolidated for hearing in the Supreme Judicial Court.

*John H. LaChance* (*Milly A. Whatley* with him) for the juvenile.

*Cynthia A. Vincent*, Assistant District Attorney, for the Commonwealth.

GREANEY, J. At issue in this case are the portions of St. 1991, c. 488, § 3, which amended G. L. c. 119, § 61, the statute concerning the disposition of certain juvenile matters, to read as follows:

"If the offense alleged [against a child who is fourteen years or older] is murder in the first or second degree, the commonwealth may proceed by filing a complaint in juvenile court or in a juvenile session of a district court, as the case may be, or by filing an indictment in such court. In such proceedings initiated by the filing of a complaint, a probable cause [Part A] hearing shall be held within the time set forth in this section, unless the commonwealth shall have proceeded by indictment prior to such hearing. If the commonwealth has pro-

ceeded by indictment, no probable cause [Part A] hearing shall be held, and a transfer [Part B] hearing shall be held as provided by this section. In all cases brought pursuant to the provisions of this paragraph, the child shall have the right to an indictment proceeding under section four of chapter two hundred and sixty-three, unless such child, upon advice of counsel, duly waives indictment."

The juvenile in this case has been charged with delinquency by reason of murder by a complaint in 'the Juvenile Court Department and with murder by an indictment returned by a grand jury to the Superior Court Department. See G. L. c. 265, § 1 (1990 ed.). Both the complaint and the indictment concern the same incident. The juvenile argues that the indictment provisions of the amended § 61 impermissibly conflict with existing legislation, and, therefore, are invalid. If the provisions are found valid, the juvenile argues that, despite the existence of the indictment and the language of the new § 61, he still is entitled to receive a probable cause (Part A) hearing in the Juvenile Court. The Commonwealth disputes the juvenile's arguments and also challenges an order of the Superior Court which denied the Commonwealth's motion to transmit the pending murder indictment to the Juvenile Court.

The parties have agreed on the facts. On January 9, 1992, a complaint was entered in the Juvenile Court charging the juvenile, who was fourteen years old at the time of the alleged offense, with delinquency by reason of murder. On January 23, 1992, an indictment was returned to the Superior Court charging the juvenile with murder. It was ordered that notice of the indictment be furnished to the juvenile and that the indictment be immediately entered on the Superior Court docket.

On February 5, 1992, the juvenile was arraigned in the Juvenile Court on the delinquency complaint. That complaint is still pending. At the time of the juvenile's arraignment, the Commonwealth filed a certified copy of the indictment in the

Juvenile Court. The Commonwealth then moved, pursuant to the new § 61, to proceed with a transfer (Part B) hearing limited to the questions of the juvenile's dangerousness to the public and his amenability to rehabilitation. The juvenile objected to the filing of the certified copy of the indictment and moved for a probable cause (Part A) hearing. A Juvenile Court judge denied the juvenile's motion to strike the copy of the indictment and ruled that the indictment was an appropriate charging document in the Juvenile Court.

The juvenile subsequently moved in the Superior Court to dismiss the indictment, and the Commonwealth moved to transmit the indictment directly to the Juvenile Court. A Superior Court judge denied both motions and ordered that the indictment remain in the Superior Court pending the result of the transfer hearing in the Juvenile Court. The juvenile brought a petition seeking relief from the indictment pursuant to G. L. c. 211, § 3 (1990 ed.), in the Supreme Judicial Court for the county of Suffolk. That case was reserved and reported without decision by a single justice. The Commonwealth was also granted leave to appeal from the denial of its motion to transmit the indictment to Juvenile Court, and its appeal has been consolidated with the reported case.

Simultaneously with the amendment of § 61, the Legislature also amended G. L. c. 119, § 72, to provide mandatory penalties for juveniles convicted in the Juvenile Court and juvenile sessions of the District Court of murder in the first or second degree. St. 1991, c. 488, § 7.[2] Thus, a juvenile who

---

[2] The penalty portions of § 72 were amended to read as follows:

"If a child is adjudicated a delinquent by reason of having violated section one of chapter two hundred and sixty-five [and] if the adjudication is for murder in the first degree such child shall be committed to a maximum confinement of twenty years. Such confinement shall be to the custody of the department of youth services in a secure facility until a maximum age of twenty-one years and thereafter shall be to the custody of the department of correction for the remaining portion of that commitment but in no case shall the confinement be for less than fifteen years and said child shall not be eligible for parole under section one hundred and thirty-three A of chapter one hundred and twenty-seven until said child has served fifteen years of said confinement. Thereafter said child shall be subject to the provisions of law governing the granting of parole permits by the parole

is adjudicated delinquent by reason of murder shall in these courts, in the case of first degree murder, be sentenced to a term of twenty years (fifteen years to be served) or, in the case of second degree murder, be sentenced to a term of fifteen years (ten years to be served) in a Department of Youth Services (DYS) facility until age twenty-one[3], and, thereafter, in a facility administered by the Department of Correction.

By the amendments to §§ 61 and 72, the Legislature: (a) gave to a prosecutor in a murder case involving a juvenile who is fourteen years of age or older the option of proceeding against the juvenile in the Juvenile Court or a juvenile session of the District Court by way of indictment; (b) dispensed with the probable cause (Part A) hearing when the indictment procedure is used by substituting for that hearing the grand jury's determination that probable cause exists to find that the juvenile has committed murder; (c) provided for mandatory penalties if, after a transfer (Part B) hearing, the juvenile's case is retained within the juvenile system and the juvenile is adjudicated delinquent by reason of first or second degree murder; and (d) conferred jurisdiction, in the nature

---

board. If said child is adjudicated a delinquent by reason of having violated section one of chapter two hundred and sixty-five and if that adjudication is for murder in the second degree such child shall be committed to a maximum confinement of fifteen years. Such confinement shall be to the custody of the department of youth services in a secure facility until a maximum age of twenty-one years and thereafter to the custody of the department of correction for the remaining portion of that sentence, but in no case shall the confinement be for less than ten years and said child shall not be eligible for parole under section one hundred and thirty-three A of chapter one hundred and twenty-seven until said child has served ten years of said confinement. Thereafter said child shall be subject to the provisions of law governing the granting of parole permits by the parole board. Notwithstanding any other provisions of this section, if said adjudication is for manslaughter said child shall be committed to the custody of the department of youth services until he reaches twenty-one years of age."

[3]The Commissioner of Youth Services, in discretion and after consultation with the Commissioner of Correction, may transfer a juvenile adjudicated delinquent by reason of murder to the custody of the Department of Correction anytime after the juvenile's eighteenth birthday. See St. 1991, c. 488, § 8.

of criminal jurisdiction, on the Juvenile Court and on juvenile sessions of the District Court with respect to a juvenile murder case. The juvenile maintains that these changes are ineffective because they are barred by existing legislation or are violative of his constitutional rights.

1. *Alleged conflict between G. L. c. 119, §§ 61 and 74.* The juvenile first directs attention to G. L. c. 119, § 74 (1990 ed.), which provides, in pertinent part, that "no criminal proceeding shall be begun against any person who, prior to his seventeenth birthday commits an offense against the law of the commonwealth . . . unless proceedings against him as a delinquent child have been begun and dismissed as required by section sixty-one." The juvenile also refers to *A Juvenile, petitioner*, 364 Mass. 531, 540 (1974), in which it was said with respect to § 74, that "[e]xcept as to minor motor vehicle offences, proceedings against a juvenile who has not attained his seventeenth birthday must be initiated at the District [or Juvenile] Court level, and no criminal proceeding may be commenced elsewhere until a juvenile complaint has been begun and dismissed." The juvenile also points out that proceedings under G. L. c. 119, §§ 52-63 (1990 ed.), have not traditionally been deemed criminal proceedings, see G. L. c. 119, § 53, while a presentation to a grand jury and the return of an indictment constitute criminal proceedings in the Superior Court. The juvenile urges us to conclude that, because the delinquency complaint against him was (and still is) pending in the Juvenile Court and because no transfer (Part B) hearing has yet occurred, G. L. c. 119, § 74, deprived the grand jury, as the body initiating criminal proceedings, of any authority to issue the indictment. We do not agree.

The Legislature possesses the unquestioned power to alter the jurisdiction it has conferred on the lower courts of the Commonwealth. "The Juvenile [and juvenile sessions of the District] Courts, like all the courts of the Commonwealth, except the Supreme Judicial Court, are creatures of the Legislature and derive their powers, other than those powers that are inherent in all courts . . . from the Legislature." *Parents*

*of Two Minors* v. *Bristol Div. of the Juvenile Court Dep't*, 397 Mass. 846, 851 (1986). "It is a first principle that the jurisdictions of the several lower courts of this Commonwealth, and therefore their powers, are limited to those granted by the Constitution of the Commonwealth or by the Legislature. *Mountfort* v. *Hall*, 1 Mass. 443, 457 (1805)." *Johnson* v. *Commonwealth*, 409 Mass. 712, 716 (1991). *Police Comm'r of Boston* v. *Municipal Court of the Dorchester Dist.*, 374 Mass. 640, 662-663 (1978). *Crocker* v. *Superior Court*, 208 Mass. 162, 171 (1911). The Legislature had the authority to enlarge the jurisdiction of the Juvenile Court and the juvenile sessions of the District Court, by the amendment of § 61 to include jurisdiction in the nature of criminal jurisdiction over juvenile murder cases. The Legislature also had the authority to revise the procedure for the initiation of a murder charge against a juvenile to include the use of an indictment to bring the charge.

Statutes concerning a common topic are to be read "as a whole to produce an internal consistency." *Commonwealth* v. *Fall River Motor Sales, Inc.*, 409 Mass. 302, 316 (1991). Section 74 of G. L. c. 119 provides, in substance, that, before a juvenile defendant can be required to face adult criminal charges in the Superior Court, a judge sitting in a juvenile session must, based on the requirements set out in G. L. c. 119, § 61, relinquish jurisdiction over the juvenile's case. Cf. *Commonwealth* v. *Wayne W.*, 414 Mass. 218, 221-222 (1993) (discussing transfer of a case from Juvenile to Superior Court). Because the new § 61 preserves this requirement, changing certain aspects of the procedure involved in the transfer process, we discern no conflict of any real significance between the new § 61 and § 74. See *Stokes* v. *Commonwealth*, 368 Mass. 754, 772 (1975) (act committed against laws of Commonwealth, committed by juvenile, is criminal act; G. L. c. 119, §§ 61, 74, 75, only provide means of determining whether the juvenile shall be tried as juvenile or as adult). Nothing in § 74, therefore, affects the validity of the indictment returned against the juvenile.

2. *The Juvenile Court's acceptance of grand jury indict-
ment.* Because a grand jury returns indictments to the Supe-
rior Court, see G. L. c. 277, § 65 (1990 ed.), and G. L. c.
212, § 7 (1990 ed.), the juvenile contends that the Juvenile
Court had no authority to accept the filing of the indictment
against him. We do not agree.

By amending § 61, the Legislature changed the means by
which a juvenile who is fourteen years of age or over can be
charged with murder in the Juvenile Court or the juvenile
sessions of the District Court. At the same time, by amend-
ing § 72, the Legislature imposed mandatory criminal
sentences and broadened the placement authority of the De-
partment of Correction when it receives custody of a juvenile
who is serving one of the mandatory sentences. Simultane-
ously with the amendments to §§ 61 and 72, the Legislature
amended G. L. c. 218, § 27 (1990 ed.), by St. 1991, c. 488,
§ 9, to enlarge the commitment power of the Juvenile Court
and the juvenile sessions of the District Court to conform
with § 72, and it also amended G. L. c. 263, § 4 (1990 ed.),
by St. 1991, c. 488, § 10, to provide that "[a] juvenile
charged in juvenile court or in a juvenile session of a district
court with delinquency by [reason of murder] shall also have
the right to be proceeded against by indictment." All of the
changes described above were meant to increase the jurisdic-
tion of the Juvenile Court and the juvenile sessions of the
District Court and to expand the authority of the Depart-
ment of Correction. The amendments took into account that
the imposition of lengthy criminal sentences to State correc-
tional facilities (as distinguished from commitments to the
Department of Youth Services) should be accompanied by
the procedures that apply to the prosecution of adults in the
Superior Court. See, e.g., *Brown* v. *Commissioner of Correc-
tion,* 394 Mass. 89, 92 (1985) (art. 12 of the Massachusetts
Declaration of Rights prohibits confinement in State prison
of a juvenile who has not had the protection of a grand jury
indictment or voluntarily waived that right).

"[A] grant of jurisdiction [or authority] 'carries with it by
implication power to use the necessary means to exercise and

enforce that jurisdiction [or authority].' " *Police Comm'r of Boston* v. *Municipal Court of the Dorchester Dist.*, 374 Mass. 640, 663 (1978), quoting *Commonwealth* v. *New York Cent. & H.R. R.R.*, 206 Mass. 417, 429 (1910). Consistent with this principle, we conclude that the Juvenile Court and juvenile sessions of the District Court have, by implication, the power to accept an indictment returned in the first instance to the Superior Court, and that, in the case of a juvenile charged with murder, the indictment then serves as the charging document.[4] See *District Attorney for the N. Dist.* v. *Lowell Div. of the Dist. Court Dep't*, 402 Mass. 511, 514 n.4 (1988). See also *Commonwealth* v. *Beneficial Fin. Co.*, 360 Mass. 188, 227 (1971) (in criminal case, trial court has many powers not found in express statutory language), cert. denied sub nom. *Farrell* v. *Massachusetts*, 407 U.S. 910, and sub nom. *Beneficial Fin. Co.* v. *Massachusetts*, 407 U.S. 914 (1972).

3. *Transmittal of indictment from Superior to Juvenile Court.* The same principles apply to the question raised by the Commonwealth's appeal from the Superior Court judge's denial of its motion to transmit the indictment against the juvenile to the Juvenile Court.

The new § 61 provides that "the commonwealth may proceed by filing a complaint in juvenile court . . . or by filing an indictment *in such court*" (emphasis added). St. 1991, c. 488, § 3. In this case, the Commonwealth intends to proceed solely on the indictment. The lack of express direction in § 61 that the indictment is to be transmitted by the Superior Court to the Juvenile Court does not prevent the Superior Court from ordering transmittal. As has been discussed, the Legislature has the power to alter the jurisdiction of lower courts and to provide them with the authority necessary for the exercise of new or changed jurisdiction. *Mountfort* v. *Hall, supra.* By the new § 61, the Legislature authorized the

---

[4]Consequently, we reject the juvenile's suggestion that the Legislature was required to create a new grand jury as an appurtenance to the Juvenile Court or juvenile sessions of the District Court before an indictment could be made the charging document in a juvenile murder case.

Juvenile Court and the juvenile sessions of the District Court to accept filings of indictments which, by statute, must be entered initially on the docket of the Superior Court. G. L. c. 277, § 65 (1990 ed.). This is the plain intent of the language emphasized above. As a logical incident to the revised power of the Juvenile Court and juvenile sessions of the District Court, the Superior Court possesses the ability to transmit to the appropriate Juvenile Court or juvenile session of the District Court the indictment of a juvenile charged with murder,[5] and such a transmittal should have occurred here.[6]

4. *Constitutional challenges to the statute.* (a) *Due process.* "A State which elects to commit to its judiciary the responsibility of determining whether a youthful offender will be tried as a juvenile or an adult (as the Commonwealth presently does by means of G. L. c. 119, § 61) must observe

---

[5] We note that the Legislature has now expressly provided for the transmittal of an indictment of a juvenile charged with murder from the Superior to the Juvenile Court. See St. 1992, c. 398, § 7, amending G. L. c. 263, § 4. We do not rely on the 1992 amendment in our disposition of this issue. However, when the Legislature corrects a technical omission in a statutory provision by subsequent legislation, we may view the corrective legislation as clarifying the intention of the Legislature with reference to the existing legislation, in this case St. 1991, c. 488, §§ 3 and 10. See Singer, 2A Sutherland Statutory Construction § 45.15 (5th ed. 1992) ("An amendment to a statute may properly be considered when determining legislative intent").

[6] Out of caution, because § 61 was newly amended, had not been construed by any court, and did not explicitly provide a mechanism for the transmittal of an indictment between the Superior and Juvenile Courts, the Commonwealth obtained an indictment in the Superior Court, and filed a complaint and a certified copy of the indictment in Juvenile Court. We have concluded that the indictment should have been transmitted to the appropriate Juvenile Court and that an indictment can serve as the charging document in these cases.

The juvenile appears to argue that, because the complaint is still pending, he is entitled to a probable cause (Part A) hearing. The statute provides that the filing of an indictment obviates the need for a Part A hearing. On remand, the complaint should be dismissed. The Commonwealth should proceed on the indictment. If, after a transfer (Part B) hearing, the Juvenile Court retains jurisdiction over the juvenile, the indictment remains the charging document in Juvenile Court. If transfer is ordered, the indictment should be retransmitted to the Superior Court for further proceedings there.

only the constitutional due process requirement of essential fairness." *Commonwealth* v. *Wayne W., supra* at 223. Relying on Federal due process rights, the juvenile maintains that there is unfairness of constitutional dimension in depriving him of the protection provided by a probable cause (Part A) hearing by the substitution of the grand jury indictment process. This court has rejected this contention when it was raised with respect to adult criminal proceedings. On this point, we see no constitutionally compelling reason to distinguish between juveniles and adults charged with murder.

A probable cause hearing on a complaint and an indictment "are alternative means for establishing probable cause to hold a juvenile for trial." *Lataille* v. *District Court of E. Hampden*, 366 Mass. 525, 530-531 (1974). A probable cause hearing provides an individual, juvenile or adult, see *Commonwealth* v. *Ortiz*, 393 Mass. 523, 535 (1984), with "collateral benefits with respect to impeachment, discovery, and possible dismissal of charges without a trial," *Lataille, supra* at 529-530, which are not present when a juvenile is indicted by a grand jury.[7] It cannot be doubted, however, that a grand jury indictment is a constitutionally proper means of commencing proceedings against an individual charged with violating G. L. c. 265, § 1. *Id.* at 531 (declining to hold that the determination of probable cause reached by the grand jury is "insufficient in law"). "[T]he [collateral benefits] of the preliminary hearing . . . are not independent rights to be asserted apart from their function of ensuring that the ac-

---

[7] At a probable cause hearing, a defendant is entitled to legal representation, may cross-examine the Commonwealth's witnesses, and may present witnesses of his own. See *Myers* v. *Commonwealth*, 363 Mass. 843 (1973); K.B. Smith, Criminal Practice and Procedure §§ 664-667 (1983). At the probable cause portion of a transfer hearing, "a determination of probable cause means a determination that there exists sufficient credible evidence to warrant a conclusion by a fact finder beyond a reasonable doubt that the defendant is guilty." *Commonwealth* v. *Wayne W., supra* 223. "[A] grand jury indictment depends only on the existence of evidence sufficient to warrant a finding of 'probable cause to arrest [the defendant],'" *Commonwealth* v. *Maggio*, 414 Mass. 193, 198 (1993), quoting *Commonwealth* v. *O'Dell*, 392 Mass. 445, 451 (1984).

cused is held only when a crime has been committed and there is probable cause to believe the accused to be guilty." *Id.* at 530. We conclude that the substitution in § 61 of a grand jury indictment for a probable cause (Part A) hearing does not violate the juvenile's Federal due process rights.

(b) *Equal protection.* The juvenile contends that legislation singling out juveniles charged with murder, and denying them the protection of a probable cause (Part A) hearing, violates Federal constitutional rights of equal protection. Juveniles charged with murder are not a suspect class, and they do not have a constitutionally protected right to remain in the juvenile justice system. *Commonwealth v. Wayne W.,* *supra* at 226. The question is whether the different treatment given a juvenile charged with murder by the new legislation is "reasonably related to a legitimate legislative goal." *Id.* We are satisfied that this standard is met.

Previously, a juvenile retained within the juvenile justice system and adjudicated delinquent by reason of murder incurred a maximum penalty of commitment to a DYS facility. See G. L. c. 119, § 58, as amended through St. 1990, c. 267, § 2. The Legislature reasonably could have concluded that this was no longer sufficient to protect the public from the risk of harm posed by juveniles who commit murder. In so doing, the Legislature appears to have been influenced by the soaring juvenile homicide rate and the escalation of senseless, and oftentimes unprovoked, acts of violence by armed youths. The Legislature also reasonably could have concluded that a comparatively short period of incarceration in a treatment setting was insufficient punishment for a juvenile who commits murder, and that the imposition of longer sentences could have a valuable deterrent effect. "It is for the Legislature to balance the interests of juveniles against the public's interest[s]," *News Group Boston, Inc.* v. *Commonwealth*, 409 Mass. 627, 632 (1991), and it has great latitude to prescribe penalties vindicating the legitimate interests of society. *Commonwealth* v. *Jackson*, 369 Mass. 904, 909 (1976). Proceeding by indictment, which has the effect of substituting a grand jury indictment for a probable cause

(Part A) hearing, was a necessary part of a statutory plan which was intended to impose extended sentences on juveniles adjudicated delinquent by reason of murder.[8]

5. *Rule of lenity.* "[The] rule [of lenity] may be applied when a statute can plausibly be found to be ambiguous to give the juvenile the benefit of the ambiguity." *Commonwealth* v. *Roucoulet*, 413 Mass. 647, 652 (1992). The juvenile argues that § 61 is so beset with ambiguity that the rule of lenity should be applied to require a probable cause (Part A) hearing and to have his case processed entirely under the prior version of § 61. We do not agree.

"The maxim [of lenity] . . . does not mean that an available and sensible [statutory] interpretation is to be rejected in favor of a fanciful or perverse one." *Id.*, quoting *Commonwealth* v. *Tata*, 28 Mass. App. Ct. 23, 25-26 (1989). The language used by the Legislature in St. 1991, c. 488, § 3, may not be as complete and precise in all respects as it could have been. To the extent that the new § 61 is ambiguous, however, the uncertainty only concerns matters of procedure which do not involve a juvenile's substantive or fundamental rights. The Legislature's intent, to alter the Commonwealth's method of proceeding against juveniles charged with murder, is clear. The need for clarification in the procedural aspects of the legislation under consideration does not warrant application of the rule of lenity to make the legislation ineffective.

6. *Disposition.* An appropriate judgment is to be entered on the petition brought by the juvenile in the county court under G. L. c. 211, § 3, denying the relief he requested. The order of the Superior Court denying the Commonwealth's

---

[8]The juvenile also maintains that the amendments to G. L. c. 119, § 61, depriving him of a probable cause (Part A) hearing, violate rights of due process and equal protection granted to him by art. 12. "[He] make[s] no meaningful argument, however, on the respects in which art. 12 should be construed to grant [him] greater rights than those afforded by the Fourteenth Amendment to the United States Constitution. We discern no basis for implying any greater rights under the State Constitution in these circumstances." *Commonwealth* v. *Wayne W., supra* at 226.

motion to transmit the indictment to the Juvenile Court is reversed, and an order is to be entered allowing that motion.

*So ordered.*