PATRICK P., a juvenile, *vs.* COMMONWEALTH.

Suffolk. September 12, 1995. - October 4, 1995.

Present: LIACOS, C.J., WILKINS, LYNCH, & O'CONNOR, JJ.

*Delinquent Child. Juvenile Court,* Delinquent child. *Homicide. Practice, Criminal,* Juvenile delinquency proceeding, "Two tier" court system, Trial by jury, Capital case. *Statute,* Construction.

Statute 1992, c. 379, §§ 139 & 141, amending G. L. c. 218, §§ 26A & 27A, and abolishing trial de novo in the District Court Department, did not amend G. L. c. 119, §§ 55A & 56, so as to abolish the trial de novo system in the Juvenile Court. [188-192]

This court concluded, in light of the penalties faced by juveniles adjudicated delinquent by reason of murder in the first or second degree, that such cases are not "capital" cases, and a juvenile defendant is not precluded by G. L. c. 263, § 6, from exercising his right to a first instance bench trial in the Juvenile Court with appeal to a jury session of that court, pursuant to G. L. c. 119, §§ 55A & 56. [192-195]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on September 8, 1994.

The case was reported by *Nolan, J.*

*Alan Jay Black* for the juvenile.

*Jane Davidson Montori,* Assistant District Attorney, for the Commonwealth.

*Terry Scott Nagel,* for Massachusetts Association of Criminal Defense Lawyers, amicus curiae, submitted a brief.

LIACOS, C.J. On November 30, 1993, the juvenile was indicted by a grand jury in Hampden County on charges of murder, assault with intent to murder, kidnapping (two indictments), assault and battery by means of a dangerous weapon (two indictments), and illegal possession of a fire-

arm.[1] These indictments were transferred to the Juvenile
Court on December 14, 1993, by an order of transmittal. On
January 27, 1994, the juvenile was arraigned in the Juvenile
Court on the seven indictments, and entered pleas of not
guilty. After a transfer hearing, a judge of the Juvenile
Court refused to transfer the case to the Superior Court and
retained jurisdiction over the juvenile.

The case was assigned for trial. The juvenile requested a
first instance bench trial with the right to a subsequent de
novo jury trial. A judge denied the request and a similar mo-
tion without formal written opinion on September 2, 1994.
The juvenile filed a petition for relief pursuant to G. L.
c. 211, § 3 (1994 ed.), in the county court. A single justice
reserved and reported the matter to the full bench.

The juvenile asserts that the Juvenile Court judge erred in
denying him a first instance bench trial with the right to a
subsequent jury trial, contending that such a right has not
been eliminated in the Juvenile Court. He further argues
that, if the right to de novo jury trial has been abolished, it is
a violation of his due process rights to enforce a change in
the governing statutes against him. Because we find that the
de novo system in the Juvenile Court remains in place for
juveniles charged with being delinquent by reason of murder,
we need not consider the juvenile's due process argument.
We remand this case to the county court where an order is to
be entered vacating the order of the Juvenile Court denying

---

[1]Two sets of complaints also were issued against the juvenile in the
Springfield Division of the Juvenile Court Department. The first set
charged him with murder, two counts of assault and battery with a dan-
gerous weapon, and armed assault with intent to rob. The juvenile was
arraigned on these charges in Juvenile Court on November 15, 1993, and
entered a plea of not delinquent. Four additional complaints were issued
against the juvenile on December 21, 1993, charging him with assault with
intent to murder, two counts of kidnapping, and illegal possession of a fire-
arm. The juvenile was arraigned on the additional complaints on Decem-
ber 21, 1993, and entered pleas of not delinquent. On the same date, one
complaint for armed assault with intent to rob was nolle prossed by the
Commonwealth. On the juvenile's arraignment on the indictments on Jan-
uary 27, 1994, the remaining juvenile complaints were dismissed by the
court.

the juvenile's right to a bench trial and remanding the matter to that court for a bench trial with the subsequent right to appeal to a jury for trial de novo.

*De novo jury trials in the Juvenile Court.* Legislative amendments effective January 1, 1994, and applying only in cases commenced after that date, abolished the de novo trial system in the District Court Department of the Commonwealth. See St. 1992, c. 379, §§ 139 & 141, amending G. L. c. 218, §§ 26A & 27A. Prior to these amendments, a defendant in the District Court Department was entitled to waive his right to a jury trial in the first instance and have his case heard by a judge, with the right to appeal to the jury session. *Id.* When the Legislature amended G. L. c. 218, §§ 26A & 27A, it did not similarly amend G. L. c. 119, §§ 55A & 56, the corresponding provisions pertaining to the Juvenile Court Department. The de novo system, then, has not been explicitly abolished in the Juvenile Court.

The Commonwealth suggests that recent amendments to G. L. c. 119, however, reveal an implied intent by the Legislature also to abolish the de novo system in the Juvenile Court. See St. 1990, c. 267. These amendments remove certain procedural benefits formerly available to a juvenile charged with delinquency by reason of murder, and grant to the Juvenile Court jurisdiction to sentence juveniles to State prison.[2] These amendments, inter alia, mandate the Juvenile Court hold transfer hearings for juveniles over the age of fourteen years charged with murder, create a rebuttable presumption that such juveniles present a significant danger to the public and are not amenable to rehabilitation within the juvenile justice system, and reduce the Commonwealth's burden of proof for showing dangerousness and lack of amenability from clear and convincing evidence to a preponderance of the evidence. See G. L. c. 119, § 61, as amended by

---

[2] General Laws c. 119, § 72, as amended by St. 1991, c. 488, § 7, continues to refer to a juvenile over the age of fourteen years who has been convicted of murder as "*a child*" who is "*adjudicated a delinquent* by reason of having violated section one of chapter two hundred and sixty-five" (emphasis added).

St. 1990, c. 267, § 3. Certain 1991 amendments allow the Juvenile Court to sentence children found delinquent by reason of murder to mandatory sentences in State prison.[3] G. L. c. 119, § 72, as amended by St. 1991, c. 488, § 7. The Commonwealth asserts that "[t]hese amendments to G. L. c. 119 reflect the [L]egislature's intention now to treat juveniles charged with murder as adults, rather than as children."

The Commonwealth's argument that such amendments reflect a legislative intent to abolish de novo trials for murder cases heard in Juvenile Court is unpersuasive. The Commonwealth points to no legislative history to support this contention. In fact, contrary to the Commonwealth's claim, the legislative history reveals instead a reluctance to engage in extensive revision of the juvenile justice system. The Legislature specifically rejected a gubernatorial proposal that would mandate transfer of juveniles charged with murder in the first or second degree to the Superior Court to proceed against them "in accord with the usual manner and course of criminal proceedings." 1991 Senate Doc. No. 1795. Rather, the Legislature, subsequent to this proposal, continued to provide that the Juvenile Court retains discretion to refuse to transfer juvenile defendants to the Superior Court. The amendments continue to refer to a juvenile murder defendant as "the child." G. L. c. 119, § 61 (1994 ed.).[4] The most severe punishment remains substantially less than that faced

---

[3]Maximum confinement for a juvenile over the age of fourteen years adjudicated a delinquent by reason of having committed murder in the first degree is twenty years. Such confinement is to the custody of the Department of Youth Services until the juvenile reaches the age of twenty-one years, and thereafter is to the Department of Correction. The juvenile becomes eligible for parole after fifteen years. The maximum confinement for a juvenile adjudicated a delinquent by reason of committing murder in the second degree is fifteen years, with eligibility for parole after ten years. G. L. c. 119, § 72, as amended by St. 1991, c. 488, § 7.

[4]General Laws c. 119, § 61 (1994 ed.), provides as follows: "The commonwealth may request a transfer hearing whenever it is alleged in a complaint that a child, who is fourteen years old or older, has committed an offense against a law of the commonwealth, which, if he were an adult, would be punishable by imprisonment in the state prison, and that the offense has allegedly been committed by a child who had previously been

by adult defendants. Finally, although juveniles adjudicated delinquent may now be sentenced to State prison, they remain entrusted until the age of twenty-one to the custody of the Department of Youth Services. G. L. c. 119, § 72 (1994 ed.). The limited extent of the revisions to the juvenile justice statutes belies an implication that juveniles are now to be treated in exactly the same way as adult criminal defendants.

The Commonwealth cites *Charles C. v. Commonwealth*, 415 Mass. 58 (1993), for the proposition that the procedures available in juvenile murder proceedings should mirror those applicable in the Superior Court. That language, referring to a juvenile's right to indictment in the Juvenile Court, reads, "The amendments took into account that the imposition of lengthy criminal sentences to State correctional facilities (as

committed to the department of youth services, or involves the threat or infliction of serious bodily harm.

"The court shall hold a transfer hearing whenever the commonwealth so requests. The court shall order a transfer hearing in every case in which the offense alleged is murder in the first or second degree, manslaughter, or a violation of section eighteen, twenty-two, twenty-two A or twenty-six of chapter two hundred and sixty-five, or section fourteen of chapter two hundred and sixty-six.

". . .

"If the offense alleged is murder in the first or second degree, manslaughter, or a violation of section eighteen, twenty-two, twenty-two A or twenty-six of chapter two hundred and sixty-five, or section fourteen of chapter two hundred and sixty-six, this portion of the transfer hearing shall be held within thirty days of the probable cause portion; provided, however, that a failure to hold such portion of the transfer hearing within said thirty days shall not prohibit such hearing from being held at a later time as determined by the court.

"If the offense alleged is murder in the first or second degree, the commonwealth may proceed by filing a complaint in juvenile court or in a juvenile session of a district court, as the case may be, or by indictment as provided by chapter two hundred and seventy-seven. In such proceedings initiated by the filing of a complaint, a probable cause hearing shall be held within the time set forth in this section, unless the commonwealth shall have proceeded by indictment prior to such hearing. If the commonwealth has proceeded by indictment, no probable cause hearing shall be held, and a transfer hearing shall be held as provided by this section. In all cases brought pursuant to the provisions of this paragraph, the child shall have the right to an indictment proceeding under section four of chapter two hundred and sixty-three, unless such child, upon advice of counsel, duly waives indictment."

distinguished from commitments to the Department of Youth Services) should be accompanied by the procedures that apply to the prosecution of adults in the Superior Court." *Id.* at 65. This language states only the obvious principle that, where prison sentences may be imposed, juveniles are entitled to the procedural protection commensurate with the risk to loss of liberty.

> "When the Legislature added the indictment provisions to section 61 as part of the 1991 revision of that statute, it apparently did so to address possible constitutional issues. In this regard, the Legislature recognized that because section 72 of M. G. L. A. c. 119 permits (as a result of the 1991 amendment) the imposition of a criminal sentence (in addition to a commitment to the Department of Youth Services until a maximum age of twenty-one before commencement of the criminal sentence) in a Juvenile Court proceeding, comparable safeguards appurtenant to the adult criminal system should be applicable in such circumstances. Apparently, the Legislature was concerned that the provisions of section 72 authorizing incarceration of juveniles within the Department of Correction[] would be vulnerable to an equal protection challenge unless the right to a grand jury indictment was provided." (Footnotes omitted.)

R.L. Ireland, Juvenile Law § 16, at 123 (1993). See *Commonwealth* v. *Perry P.*, 418 Mass. 808, 813 (1994) ("Although [Mass. R. Crim. P.] 3 [c] [1] [, 378 Mass. 847 (1979)] was designed to deal with an adult's waiver of the right to an indictment [and thus to obtain a probable cause hearing], we would not deny to a juvenile application of the same conditions for an effective waiver of a right to an indictment").

The Commonwealth next suggests that pending legislation may be taken into account to clarify the Legislature's intent and demonstrate that the failure previously to enact such legislation was an oversight. Two pending bills propose elimina-

tion of trial de novo in juvenile murder cases.[5] 1995 House Doc. No. 5154, An Act eliminating trial de novo, so-called, for juveniles. 1995 Senate Doc. No. 1564, An Act prohibiting trial de novo for juvenile murderers. The Commonwealth suggests that this court may resort to pending legislation to determine legislative intent, if that pending legislation is "corrective" of a "technical omission in a statutory provision." *Charles C.* v. *Commonwealth, supra* at 67 n.5 ("we may view the corrective legislation as clarifying the intention of the Legislature with reference to the existing legislation"). See 2A Singer, Sutherland Statutory Construction § 45.15 (5th ed. 1992). While the pending legislation would abolish de novo trials in juvenile cases, it has not been enacted. Additionally, it is not "corrective" of a "technical omission." It is an unwarranted leap of logic to assume that the Legislature intended to abolish de novo trials for juvenile murder defendants, where it declined to do so in amendments to the statutes relating to the treatment of juveniles charged with murder. See 2A Singer, Sutherland Statutory Construction § 46.01 (5th ed. 1992 & Supp. 1995).

*Jury waiver provisions of G. L. c. 263, § 6.* General Laws c. 263, § 6 (1994 ed.), provides that "[a]ny defendant in a criminal case other than a capital case . . . may . . . waive his right to trial by jury . . . ." The Legislature chose to exempt capital cases from the option to waive a jury trial, which option is available in all other criminal cases. Such a distinction is justified by "legislative concern with procedural safeguards in these most serious of criminal cases." *Commonwealth* v. *Barry*, 397 Mass. 718, 725 (1986), citing *Commonwealth* v. *O'Brien*, 371 Mass. 605, 606-607 (1976). "The statute . . . provid[es] that a man's life shall not depend upon findings of fact made by one man." *Commonwealth* v. *Millen*, 289 Mass. 441, 466, cert. denied, 295 U.S. 765 (1935). It appears clear that the intention of the Legislature

---

[5]One of the bills would abolish de novo trials in all juvenile proceedings. 1995 House Doc. No. 5154, An Act prohibiting trial de novo, so-called, for juveniles.

was to ensure that capital cases are heard by juries, and not tried to the bench.[6] See *Commonwealth* v. *Marshall*, 373 Mass. 65, 67 (1977) (rejecting waiver of jury trial in capital case despite abolition of death penalty); *Commonwealth* v. *O'Brien*, *supra* at 606 ("G. L. c. 263, § 6, requires a jury trial in a 'capital case'"); *Commonwealth* v. *Smith*, 357 Mass. 168, 175 n.2 (1970) ("These statutes indicate a clear legislative intent that the jury are still an indispensable part of the required tribunal for the trial of a capital case").

In *Commonwealth* v. *O'Brien*, *supra*, the defendant argued that the abolition of capital punishment abolished "capital cases," and therefore G. L. c. 265, § 6, was no longer a bar to waiver of a jury trial. This court rejected his argument and held that the definition of "capital" crimes laid out in G. L. c. 278, § 33E, determined those cases in which a jury trial could not be waived. *Id.* at 606-607. General Laws c. 278, § 33E, governs the scope of review available in capital cases and defines a "capital case" as one "in which the defendant was tried on an indictment for murder in the first degree and was convicted of murder in the first degree."[7] The Massachusetts Rules of Criminal Procedure have adopted this definition. Mass. R. Crim. P. 2 (b) (3), 378 Mass. 844 (1979).

In *Commonwealth* v. *Angiulo*, 415 Mass. 502 (1993), this court decided that a defendant convicted as an accessory before the fact to murder in the first degree was entitled to § 33E review because the punishment was the same as that for one convicted of murder in the first degree. See *Grady* v. *Treasurer of the County of Worcester*, 352 Mass. 702 (1967) (indictment as accessory before the fact sets out "capital crime" for purposes of awarding attorney's fees).

[6]This view is strengthened by G. L. c. 265, § 1 (1994 ed.), which requires that the jury rather than the judge determine the degree of murder in capital cases.

[7]Prior to its amendment, G. L. c. 278, § 33E, provided that capital crimes included those for which the defendant was convicted of murder in the second degree as well as murder in the first degree. See *Commonwealth* v. *Davis*, 380 Mass. 1, 12-17 (1980).

*Commonwealth* v. *Angiulo, supra* at 507-510, teaches that a determination of what constitutes a capital case takes into account not only the requirement of a first degree murder indictment, but also the possible severity of the punishment involved.

The maximum penalty faced by juveniles adjudicated delinquent by reason of murder in the first degree is twenty years, and ten years for murder in the second degree. G. L. c. 119, § 72. This case does not present the concerns faced in capital cases, where defendants face the proposition of life in prison without parole. See *Commonwealth* v. *Angiulo, supra* at 508-509, quoting *Dickerson* v. *Attorney Gen.*, 396 Mass. 740, 744 (1986) (a "uniquely thorough review of first degree murder convictions is warranted by the infamy of the crime and the severity of its consequences"); *Commonwealth* v. *O'Brien, supra* at 606 (capital cases are "most serious criminal cases"); *Commonwealth* v. *Millen, supra* at 466 ("a man's life shall not depend upon findings made by one man").

We conclude that a determination of delinquency by reason of murder is not a "capital" case. A juvenile defendant, then, is not precluded by G. L. c. 263, § 6 (1994 ed.), from exercising his right to a first instance bench trial with appeal to the jury session of the Juvenile Court pursuant to G. L. c. 119, §§ 55A & 56 (1994 ed.).[8]

We conclude that the de novo trial system has not been abolished either explicitly or by implication in juvenile murder cases. Further, we conclude that a determination of delinquency by reason of having violated G. L. c. 265, § 1, is not a "capital" case, even where the charging instrument is

---

[8]General Laws c. 265, § 1, in defining murder, states that, "[t]he degree of murder shall be found by the jury." Cases interpreting this statute have involved "capital" cases. See *Commonwealth* v. *Marshall*, 373 Mass. 65, 67 (1977); *Commonwealth* v. *O'Brien*, 371 Mass. 605, 606 (1976); *Commonwealth* v. *Smith*, 357 Mass. 168, 175 (1970); *Commonwealth* v. *Millen*, 289 Mass. 441, 465, cert. denied, 295 U.S. 765 (1935). As discussed above, the juvenile murder provision at issue does not constitute a "capital" crime. This statute, therefore, is no bar to operation of the de novo jury trial system in juvenile murder cases.

an indictment. The defendant, having not been transferred to the Superior Court for trial as an adult, maintains a right to a first instance trial in the bench session of the Juvenile Court with subsequent right of appeal to the jury session of the Juvenile Court.

We remand the case to the county court where an order is to be entered vacating the order of the Juvenile Court denying a bench trial, and remanding this case to the Juvenile Court for a bench trial with right of appeal to the jury session.

*So ordered.*