COMMONWEALTH vs. BART B., a juvenile.

Middlesex. December 4, 1996. - May 14, 1997.

Present: WILKINS, C.J., ABRAMS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Practice, Criminal,* Instructions to jury, Juvenile delinquency proceeding, Capital case, Assistance of counsel. *Homicide. Delinquent Child. Constitutional Law,* Assistance of counsel. *Evidence,* Hearsay, Impeachment of credibility, Prior consistent statement. *Witness,* Impeachment.

At the trial of a complaint alleging a juvenile was delinquent by reason of murder in the first degree, the judge was not required to instruct the jury on the consequences of a finding of delinquency. [913]
This court concluded that a finding of delinquency by reason of murder does not require review under the substantial likelihood of a miscarriage of justice standard pursuant to G. L. c. 278, § 33E, as a determination of delinquency by reason of murder is not a capital case. [913-914]
At the trial of a complaint alleging delinquency by reason of murder in the first degree, trial counsel's failure to object to certain hearsay statements did not create a substantial risk of a miscarriage of justice where the statements were merely cumulative of other properly admitted evidence [914-915], or where the statements were admissible as an adoptive admission of the juvenile and as a statement of a joint venturer [915].
At the trial of a delinquency complaint, trial counsel's decision not to cross-examine a prosecution witness and impeach him with his criminal record did not create a substantial risk of a miscarriage of justice, where the witness's record had been brought out on direct examination. [915-916]
No ineffective assistance of counsel was demonstrated by a juvenile's counsel's failure to move for the appointment of a stenographer, where counsel followed routine procedures in the District Court which resulted in the testimony at trial being recorded electronically. [916]
At the trial of a delinquency complaint, the judge did not err in allowing the Commonwealth to introduce prior consistent statements on redirect examination in order to rehabilitate the testimony of two witnesses. [916-917]

COMPLAINT received and sworn to in the Woburn Division of the District Court Department on June 10, 1992.

On appeal to the jury session of the Cambridge Division, the case was tried before *Mark S. Coven,* J.

*Nona E. Walker,* Committee for Public Counsel Services, for the juvenile.

*David W. Cunis,* Assistant District Attorney, for the Commonwealth.

LYNCH, J. A District Court jury found the juvenile delinquent by reason of murder in the first degree.[1] On appeal, he contends that the judge should have instructed the jury on the consequences of a delinquency finding and erroneously admitted hearsay statements. In addition, the juvenile claims ineffective assistance of counsel and asks this court to review the alleged errors under the provisions applicable to appeals of murder in the first degree under G. L. c. 278, § 33E. We affirm the judgment and decline to review a finding of delinquency by reason of murder in the first degree under G. L. c. 278, § 33E.

*Background.* We summarize the facts as the jurors could have found them, in the light most favorable to the Commonwealth. *Commonwealth* v. *Sanna, ante* 92, 93 (1997). On June 3, 1992, the victim's body was discovered in a wooded area of North Woburn. The autopsy revealed that he died of multiple blunt force trauma to the head.

On June 2, 1992, a group of teenagers, including the juvenile, had gathered after school near the Middlesex Canal, which runs near the woods where the victim's body was found. Matt Petrini, Bryce Noonan, and the juvenile separated from the group and went to see the victim, an adult male known to frequent a small clearing in the woods. The victim was not at the clearing, so they waited. At some point, the juvenile turned to Noonan and, referring to the victim, said, "We should kill him. No one will ever find out. He is a bum." Noonan agreed, but Petrini shunned the idea. The victim arrived soon after; the trio spoke to him for a few minutes and then headed back to the canal.

Petrini, Noonan, and the juvenile parted when they reached the canal. Petrini went home. Noonan and the juvenile returned to the clearing. They attacked the victim, hitting him over the head with fallen tree branches until he started

---

[1]The juvenile was found delinquent by reason of murder in the first degree in a jury-waived trial and exercised his right to a de novo jury trial in the juvenile session of the Cambridge Division of the District Court Department. See G. L. c. 119, §§ 55A & 56.

having convulsions. Then, they used rocks to bash in the victim's skull.[2]

1. *The judge's instructions.* The judge denied the juvenile's request for an instruction on the consequences of a delinquency finding. On appeal, the juvenile argues that the judge erred because the constant references to "delinquency" and "juvenile" trivialized the proceeding, and thus caused the jury to take their responsibility less seriously. We disagree.

We have held repeatedly that it is improper for a judge to place the issue of punishment before the jury. See *Commonwealth* v. *A Juvenile (No. 1)*, 396 Mass. 108, 112 (1985); *Commonwealth* v. *Smallwood*, 379 Mass. 878, 882 (1980); *Commonwealth* v. *Ferreira*, 373 Mass. 116, 124 (1977). "The role of the jury is to make findings of fact and to determine the guilt or innocence of the accused without regard to probable punishment." *Commonwealth* v. *A Juvenile (No. 1)*, *supra.* We adhere to this principle because it prevents extraneous factors from interfering with the jury's deliberations. *Commonwealth* v. *Ferreira, supra* at 125-126.

Furthermore, the juvenile has failed to demonstrate that the jury treated him differently because they were asked to decide whether he was "delinquent," as opposed to "guilty." The juvenile was accused of murder in the first degree and tried in open court. The jury listened to five days of testimony from twenty-five witnesses. The judge carefully explained the law applicable to murder. Instructions on the sentencing consequences were not necessary to convey the gravity of the trial. The judge was not required to instruct the jury on the consequences of a delinquency finding. See *Commonwealth* v. *A Juvenile (No. 1), supra.*

2. *Standard of review.* The juvenile argues that he was denied his constitutional right to effective assistance of counsel because trial counsel failed to object to the admission of hearsay evidence, failed to impeach a witness with his prior criminal history, and failed to request that the court appoint a stenographer. In addition, the juvenile contends that we should review the claims of error under the substantial likelihood of a miscarriage of justice standard because this conviction is the equivalent of a conviction of murder in the first degree. See G. L. c. 278, § 33E. We disagree.

---

[2]Bryce Noonan pleaded guilty as an adult to murder in the second degree.

Not all cases of murder in the first degree are capital offenses. In *Patrick P.* v. *Commonwealth*, 421 Mass. 186, 194 (1995), we held in another context that "a determination of delinquency by reason of murder is not a 'capital' case." We explained that "a determination of what constitutes a capital case takes into account not only the requirement of a first degree murder indictment, but also the possible severity of the punishment involved." *Id.* at 194. One convicted of murder in the first degree is subject to life in prison without the possibility of parole. G. L. c. 265, § 2. In contrast, the maximum sentence faced by a juvenile found delinquent by reason of murder is twenty years. See G. L. c. 119, § 72.[3] Consistent with our holding in *Patrick P.* v. *Commonwealth, supra,* we conclude that a finding of delinquency by reason of murder does not require a review under the § 33E standard.

We therefore must consider whether there has been ineffective assistance of counsel in the constitutional sense. See *Strickland* v. *Washington*, 466 U.S. 668, 694 (1984); *Commonwealth* v. *Satterfield*, 373 Mass. 109, 115 (1977). We review unpreserved errors to determine whether there has been a substantial risk of a miscarriage of justice. *Commonwealth* v. *Freeman*, 352 Mass. 556, 564 (1967). "The Federal standard used in deciding the seriousness of the harm caused by counsel's error differs little, if at all, from the standard of a substantial risk of a miscarriage of justice." *Commonwealth* v. *Curtis*, 417 Mass. 619, 624-625 n.4 (1994). "The standard that this court has used for testing the ineffectiveness of counsel, in a constitutional sense, is at least as favorable to a defendant as is the Federal standard . . . and, although more detailed, seems not significantly different from the standard of a substantial risk of a miscarriage of justice" (citation omitted). *Id.* Therefore "if an omission of counsel does not present a substantial risk of a miscarriage of justice . . . there is no basis for an ineffective assistance of counsel claim under either the Federal or the State Constitution." *Id.* See *Commonwealth* v. *Amirault, ante* 618, 652 n.24 (1997).

Accordingly, we review the juvenile's claims to determine whether a substantial risk of a miscarriage of justice exists in this case.

---

[3]Such confinement is to the custody of the Department of Youth Services until the juvenile reaches the age of twenty-one, and thereon to the Department of Correction. The juvenile becomes eligible for parole after fifteen years. G. L. c. 119, § 72, as appearing in St. 1991, c. 488, § 7.

a. Kevin P. Shea, a State trooper, testified to out-of-court statements made by Petrini in the course of the police investigation.[4] Another Commonwealth witness, Steven Gouveia, testified about statements made by Bryce Noonan, in the juvenile's presence, in the days following the murder.[5] The juvenile claims that trial counsel should have objected to these statements as inadmissible hearsay, and that they were highly prejudicial because they bolstered the witnesses' credibility.

We conclude that trial counsel's failure to object to the hearsay statements, considered in context, did not create a substantial risk of a miscarriage of justice. The evidence was introduced earlier in the trial when Petrini testified on direct examination. The admission of cumulative evidence does not commonly constitute reversible error. See *Commonwealth* v. *Bettencourt*, 361 Mass. 515, 519 (1972); *Commonwealth* v. *Izzo*, 359 Mass. 39, 43 (1971).

Similarly, we conclude that the admission of Gouveia's testimony was not improper. The judge ruled at first that Gouveia'a hearsay statement was admissible as an adoptive admission by the juvenile and as a statement of a joint venturer. At the conclusion of the witness's testimony the judge ruled that the statement was admissible as a statement of a joint venturer.[6] This ruling was correct and, therefore, an objection to this testimony would not have been successful. See *Commonwealth* v. *Howell*, 394 Mass. 654, 658 (1985) (not ineffective assistance when trial counsel declines to file motion with minimal chance of success).

b. The juvenile also points to trial counsel's failure to impeach the testimony of Richard DaPedra, a witness for the Commonwealth. After DaPedra was dismissed, trial counsel raised the issue. The judge offered to recall the witness, but trial counsel declined because the Commonwealth had al-

[4]Petrini told Shea about the conversation in the woods on the day of the murder. Shea's testimony paraphrased Petrini's recollection of the juvenile's statement to Noonan: "Let's kill the bum. We will never get caught. He is just a bum."

[5]According to Gouveia's testimony, Noonan said "they beat up [the victim]."

[6]The judge instructed the jury that they could only impute Noonan's statement to the juvenile if they were convinced beyond a reasonable doubt that there was a joint venture and the statement was made in the furtherance of the joint venture beyond a reasonable doubt.

ready addressed the witness's criminal history on direct ex-
amination. The juvenile now argues that failure to cross-
examine the witness was prejudicial to the defense.

In general, failure to impeach a witness does not prejudice
the defendant or constitute ineffective assistance. See *Com-
monwealth* v. *Roberts,* 423 Mass. 17, 21 (1996) (failure to
impeach not ineffective assistance); *Commonwealth* v. *Moran,*
388 Mass. 655, 661 (1983), and cases cited (failure to impeach
witness with prior criminal record not ordinarily ineffective
assistance of counsel). Because the evidence was before the
jury, there is no basis for concluding that a miscarriage of
justice occurred. Furthermore, trial counsel did not act
"manifestly unreasonably" when he decided not to recall the
witness because he thought the witness's criminal record was
effectively raised.

c. Finally, the juvenile argues ineffective assistance because
trial counsel failed to move for the appointment of a stenog-
rapher.[7] The trial transcript does not include many sidebar
conversations because the tape-recording system was unable
to record the conversations at this location.

District Court proceedings are routinely recorded electroni-
cally. See Rule 211 (A)(1) of the Special Rules of the District
Courts (1996).[8] Although we are concerned that every effort
was not made to secure a complete record of the trial for ap-
pellate review, trial counsel can hardly be faulted for follow-
ing routine procedures, especially where it has not been dem-
onstrated that transcripts of the sidebar conferences would
likely have provided the juvenile with a successful appellate
issue.

3. *Admission of prior consistent statements.* The juvenile
argues that the judge erred in allowing the Commonwealth to
introduce in evidence prior consistent statements to rehabili-

---

[7]Contrary to the juvenile's suggestion, the judge had no obligation to ap-
point a stenographer. General Laws c. 218, § 27A, provides that, "[t]he
justice presiding at [a] jury session in the . . . district court department
shall, *upon the request of the defendant,* appoint a stenographer . . ."
(emphasis added).

[8]According to Rule 211 of the Special Rules of the District Courts
(1996): "In all divisions of the District Court Department and in the Bos-
ton Municipal Court Department, all courtroom proceedings, including ar-
raignments in criminal and juvenile delinquency cases, shall be recorded
electronically, subject to the availability and functioning of appropriate rec-
ording devices . . . ."

tate the testimony of Matt Petrini and Mark Hammond on redirect examination. The juvenile did not object to the admission of these statements on this basis, but now argues that they were prejudicial because the statements improperly bolstered the credibility of the witnesses.[9] Even in the face of an objection, it would not have been improper to admit the statements. Prior consistent statements are admissible to refute a claim of recent contrivance. See *Commonwealth* v. *Kater,* 409 Mass. 433, 448 (1991); *Commonwealth* v. *Zukoski,* 370 Mass. 23, 26 (1976). See P.J. Liacos, Massachusetts Evidence § 6.15, at 328-329 (6th ed. 1994 & Supp. 1995). The judge has considerable discretion in determining whether a suggestion of recent fabrication has been made. See *Commonwealth* v. *Andrews,* 403 Mass. 441, 455 (1988); *Commonwealth* v. *Zukoski, supra.*

Here, the judge did not err in admitting the statements on this basis. On cross-examination, the defense tried to impeach Hammond and Petrini. The defense asked Hammond whether he had discussed the case with Petrini two weeks prior to the trial. The defense made much of Hammond's friendship with Petrini, asking whether he considered Petrini his "best friend," inferring that Hammond may have been motivated to protect Petrini. The defense tried to show inconsistencies in Petrini's statements to the police, implying that he had changed his story. We conclude that the judge was well within the exercise of his discretion in admitting the statements.

*Judgment affirmed.*

---

[9]The juvenile objected to the admission of Mark Hammond's prior testimony, arguing that there had been no exhaustion of memory. A review of the transcript indicates that the judge rejected this argument and admitted the testimony because the defense raised the issue of recent fabrication. Counsel did not object to this application of the hearsay rule, and thus waived his right to appeal the issue of recent fabrication. See *Commonwealth* v. *Tyree,* 387 Mass. 191, 213 (1982), cert. denied, 459 U.S. 1175 (1983) (party not permitted to raise issue on one ground at trial and another on appeal).